No. 23,608.

C. E. BRAY, *Appellee*, v. THE ST. LOUIS - SAN FRANCISCO RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. DAMAGES—*Loss by Fire from Engine—Equipment of Engine for Prevention of Fire—Instructions.* In an action for damages for loss of property destroyed by fire set by one of the defendant's engines, the following instruction was requested by the defendant, and refused by the court:

"You are instructed that, in equipping its engine for the prevention of fire, defendant was not required necessarily to adopt any particular appliances or the latest appliances or the best appliances for that purpose, but was only required to adopt appliances of standard or approved pattern or construction for the prevention of the escape of fire from said engine, and to use ordinary care in maintaining and operating it."

*Held*, the instruction was properly refused, because the rule which it embodied would permit railroad companies to establish their own standard of duty in equipment, and would limit duty to use ordinary care to maintenance and operation only.

2. SAME—*Trial—Additional Instructions After Retirement of Jury for Deliberation—Discretion of Court.* The district court has a large discretion in the matter of giving additional instructions after the jury has retired for deliberation; a judicious exercise of the discretion tends to sure and efficacious administration of justice; and only in the event of abuse, resulting in prejudice, will an exercise of the discretion be ground of reversal.

3. SAME—*Paragraph of Syllabus in Former Case Overruled.* The third paragraph of the syllabus in the case of *Foster v. Turner,* 31 Kan. 58, 1 Pac. 145, is overruled.

4. SAME—*Withdrawing Instructions—Substituting Others.* The proceedings examined, and *held,* the court did not err in withdrawing two instructions and reading to the jury substitutes for them, after the case had been submitted to the jury and it had deliberated for several hours.

5. SAME—*Instructions.* Instructions to the jury considered, and held to be free from faults attributed to them.

6. SAME—*Special Findings Not Inconsistent.* Special findings of the jury considered, and held to be consistent with each other.

7. SAME—*Evidence.* The special findings and general verdict were sustained by sufficient evidence.

Appeal from Cherokee district court; FRANK W. Boss, judge. Opinion filed April 8, 1922. Affirmed.

*R. R. Vermilion,* and *W. F. Lilleston,* both of Wichita, for the appellant; *W. F. Evans,* of St. Louis, Mo., of counsel.

*V. J. Bowersock,* of Baxter Springs, and *E. B. Morgan,* of Galena, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for loss of property burned by fire set by one of the defendant's engines. The plaintiff recovered, and the defendant appeals.

The engine was drawing a train of freight cars, and was laboring on an upgrade. A high wind was blowing, and fire was carried to the plaintiff's barn, a distance, measured on the course of the wind, of from 500 to 700 feet. The negligence charged was failure to provide sufficient spark-arresting apparatus, and unskillfulness on the part of the enginemen in operating the engine. The property destroyed consisted of the barn, two stallions, other live stock, hay, grain and farming implements, equipment, and supplies. The jury returned a verdict for $1,800 damages and for an attorney fee, and also returned findings of fact, which follow:

"1. At the time said fire is claimed by plaintiff to have been set, what if any defect was there in the fire-arresting equipment of the engine that plaintiff claims set said fire? A. Insufficient evidence.

"2. Please state fully what particular negligence, if any, you find on the part of any employee of defendant in the running and operating of the train which plaintiff claims set said fire. A. None.

"3. Do you find that on the occasion in question the engine that plaintiff claims set the fire, was equipped with apparatus of standard construction to arrest the escape of fire? A. No.

"4. If you answer the preceding question in the negative, state in what respects said engine was not equipped with apparatus of standard construction to arrest the escape of fire. A. Insufficient evidence.

"5. Was the fire complained of by plaintiff set out or started by unavoidable accident? A. Insufficient evidence.

"6. What engine of defendant, if any, do you find set fire to plaintiff's property on the occasion complained of? A. Extra 754.

"7. If you find for plaintiff, please state what particular negligence, if any, you find from the evidence defendant was guilty of, that caused the fire to plaintiff's property on the occasion complained of. A. Insufficient evidence on spark arrester.

"8. If you find for plaintiff, please state what particular employee of defendant, if any, you find was guilty of negligence that caused said fire. A. None.

"9. On the occasion complained of, do you find that an unprecedented wind was blowing? A. No."

Certain subjects are presented as they must have been presented to the jury, by debate of the evidence. The evidence will not be recited or discussed. The court concludes the jury was warranted in finding the engine set the fire. In the instructions, the sense in which the term "unprecedented," as applied to the wind, was to be understood, was elucidated by stating the jural equivalent, "that it would not have been reasonably anticipated by defendant in the exercise of ordinary care." Interpreted by the instruction, the 9th finding was sustained by the evidence, and the wind did not constitute an independent intervening cause of the fire which relieved the defendant of liability. The amount of the verdict is sustainable by the evidence.

The defendant proved that its fire-arresting apparatus consisted of what is called the master mechanic's front end, the nature of which was described to the jury. Witnesses stated the equipment was "approved" and "standard," and was generally used on coal-burning engines throughout the country. The defendant's principal witness on this subject was cross-examined as follows:

"Q. What do you mean when you say this is standard equipment? A. The size of the mesh netting used on all engines. I do not know anything about other roads except the Frisco. Other roads may have different netting.

"Q. You are not able to say whether this is the latest or newest improvement, are you? A. No.

"Q. You are not able to say whether this is the latest or best improved equipment for engines in the way of spark arresters, are you? . . . A. I am under the impression that it is the standard netting for most railroads."

The defendant requested the following instruction, which was not given:

"You are instructed that, in equipping its engines for the prevention of fire, defendant was not required necessarily to adopt any particular appliances or the latest appliances or the best appliances for that purpose; but was only required to adopt appliances of standard or approved pattern or construction for the prevention of the escape of fire from said engine, and to use ordinary care in maintaining and operating it."

The court gave the following instruction:

"7. You are instructed that the defendant is not an insurer against loss by fire that may be caused by escaping sparks or cinders, and is liable for such fire, if at all, only when caused by the negligence of such company; and if it is shown that said defendant exercised ordinary care and prudence in the operation of the particular locomotive which it is claimed caused the fire, and that said defendant exercised ordinary care and prudence to prevent the escape of cinders by supplying and maintaining reasonably sufficient and proper appliances and equipment, then defendant is not liable, and your verdict must be in its favor."

The defendant says the requested instruction should have been given to protect it from consequences of the cross-examination, whereby the plaintiff's attorney fixed in the mind of the jury the notion of latest and best fire-preventing apparatus. If the requested instruction had been confined to what the defendant was not required to do, it might have been given. Instead of that, the instruction announced a rule which will not bear analysis.

The rule contended for would permit railroad companies to fix their own standard of duty in equipment, and would limit obligation to use ordinary care to maintenance and operation only. The court has considered this subject before. In *Abbey v. Railway Co.,* 108 Kan. 88, 194 Pac. 191, the defendant proved that its cattle guards were standard guards of approved pattern in general use. The plaintiff proved that horses and cattle walked over the guards at will. The court said:

"Neither railroad companies nor cattle-guard manufacturers who succeed in having their product installed on railroads are permitted to establish standards." (p. 89.)

In the Abbey case the statute established the standard. In this case the standard is found in the common law, and was well stated to the jury in the instruction which the court gave.

It avails the defendant nothing to argue that in cases of this kind the jury fixes the standard, and there may be as many standards as jury trials. It would be a fine thing, in these days when nothing is absolute, if our system of laws was so complete we could find in it just rules to govern human conduct in all its relations. Since that is impossible, we follow the method which our legal history has demonstrated to be most serviceable in promoting social welfare. In certain fields there can be no rules in the strict sense of the term. There are standards only. Nuisance is a matter of degree. Negligence is a matter of degree. In such fields the law takes

its standards from the common experience of common life, and permits the jury, subject to direction and correction by the court, to measure conduct by them. In this instance, a device which would allow no spark to escape would choke the draft, and the problem is to construct engines so they can pull trains without throwing too much fire. There must be a balancing of interests. The carrier is likely to be so engrossed with the importance of getting traffic over the road that it will not give due consideration to imminence of danger and magnitude of disaster portended by escaping fire. It will take chances. Therefore, to protect the public from greater risk than it ought to bear, the carrier must be answerable for observance of a measure of caution which its own self-interest had no part in determining. The law must fix the standard, and the one which the court stated to the jury is the external, objective standard to be observed generally when foresight and caution are demanded.

After the jury had deliberated several hours, the court of its own motion withdrew instructions numbered 4 and 5, and read to the jury substitutes for them. The defendant argues the court was powerless to give the jury a different charge on any material issue after conclusion of argument, citing *Foster v. Turner*, 31 Kan. 58, 1 Pac. 145. The third paragraph of the syllabus in that case reads:

"After a jury has retired for the consideration of its verdict, and pending its deliberations, it may sometimes ask for further explanation or information, and the court may sometimes rightfully give the same; but the court would not in any case be justified in giving another full, complete and different charge to the jury upon any of the material questions involved in the issues of the case." (p. 59.)

·The reason given for the decision was that, previous to 1881, the jury was instructed after argument of counsel. In that year the code was amended by placing instructions to the jury before argument of counsel. The court said:

"This was the only amendment made by the legislature to the section at that time. Hence the legislature evidently intended that this new provision should be obeyed." (p. 63.)

The decision was rendered nearly forty years ago, when the minds of lawyers and judges were still dominated by that intense formalism which came near causing them to lose the respect of the people whom they serve. The succession of steps in procedure was not considered as an aid to the attainment of a just result. No result, however just, was tolerated unless the steps had been taken one by one

in the prescribed order, beginning with the designated foot. Rules of procedure are no longer regarded in that way. The purpose of the statute of 1881 was to give counsel opportunity to apply the declared law of the case in argument to the jury, and of course the statute should be obeyed. The statute was intended, however, to promote, and not to thwart justice, and was not designed to prevent the court from correcting an error, or clearing up an ambiguity, or supplying an omission, whenever that may be done without prejudice to substantial privilege. As this court indicated in the opinion in the case of *Carter v. Becker,* 69 Kan. 524, 77 Pac. 264, the district court has a large discretion in the matter of giving additional instructions after the jury has retired for deliberation; a judicious exercise of the discretion tends to sure and efficacious administration of justice; and only in the event of abuse, resulting in prejudice, will an exercise of the discretion be ground of reversal.

The third paragraph of the syllabus in the case of *Foster v. Turner,* 31 Kan. 58, 1 Pac. 145, is overruled.

The defendant objected to the substituted instructions, on the ground they were erroneous. The plaintiff needed a high wind in order to make out his case, and some of his witnesses were not sparing in use of superlatives in trying to express their conceptions of velocity of the wind. Since a strong wind was blowing, the defendant wanted one so high it would be unprecedented, but had very little evidence on the subject. It is said the instructions prevented the jury from considering the plaintiff's evidence relating to velocity of the wind, in determining whether the defendant had overcome the plaintiff's *prima facie* case of negligence, made by proving the engine set the fire.

As the case went to the jury, the defendant had three defenses: First, the fire was not proximate result of negligence on its part; second, the engine was properly equipped and managed; and third, the plaintiff was guilty of contributory negligence. The court dealt with these defenses in reverse order. Instruction No. 4, before and after modification, related to the burden resting on the plaintiff to establish his cause of action, and the burden resting on the defendant to show contributory negligence. Instruction No. 5, before and after modification, related to the plaintiff's *prima facie* case of negligence, and the burden resting on the defendant to overcome that *prima facie* case. There remained the subjects of inevitable accident and

intervention of the wind. Inevitable accident was treated separately in instruction No. 9, and intervention of the wind was treated in instruction No. 14, which reads as follows:

"14. If you find from the evidence that fire was carried by the wind from defendant's engine to plaintiff's property, and that such wind was unprecedented, that it would not have been reasonably anticipated by defendant in the exercise of ordinary care, and that but for the unprecedented nature of the wind said fire would not have occurred on said occasion, then you shall return a verdict for the defendant."

This instruction did not limit the jury to consideration of the defendant's evidence only, and there is no basis for believing the jury so understood it.

Original instructions 4 and 5 contain references to the subject of the fire not being proximately caused by defendant's negligence. In connection with these references, the instructions used the expressions, "if it shall appear from the whole evidence," and "unless you should further find by a preponderance of the evidence"—preponderance of the evidence having been defined to include the whole evidence. The subject of the defendant's negligence as proximate cause was not germane to the themes of the instructions. Injecting it into the instructions complicated and tended to confuse them. Omission of words from No. 5 made nonsense of it, and it was necessary to correct it. The opportunity was improved to clarify and simplify both 4 and 5, by taking out the extraneous matter. The result was the logical scheme of instructions which has been described. The defendant objected to these modifications, on the ground issues were singled out and given undue prominence. What issues were thus exaggerated were not specified. The actual effect of the modification was to make the various issues equally distinct and equally prominent. What the defendant really complains about is that it lost the benefit of the cumulative effect of two statements, that all the evidence should be considered in determining whether its negligence was proximate cause of the fire, that is, in determining whether or not the wind was unprecedented, since the plaintiff offered none but the statutory evidence relating to equipment and management of the engine. The discussion of instruction No. 14 sufficiently disposes of this complaint.

The defendant contends the special findings are inconsistent. The jury was asked to state what particular employee was guilty of negligence, and what particular negligence certain employees were

guilty of. (Findings 8 and 2.) Both answers were, "None." The employee who claimed he inspected the spark-arresting device before and after the fire, testified it was in good condition. The argument is, the eighth finding included the inspector, whom the jury believed; if he had found anything wrong, and had not reported it, he would have been negligent, and the jury would have so found; since he was not negligent, and testified the apparatus was in good condition, it must have been so, and the defendant is entitled to judgment. Negligence in inspection was not an issue made by the pleadings or submitted to the jury. The issue to which the inspector's testimony related was not sufficiency of inspection but sufficiency of the fire-arresting apparatus. The appliances were under investigation, not the inspector, and it may not be assumed, in order to destroy the integrity of special findings, that the court submitted, or the jury returned, a finding outside the issues. Regarding the findings as within the issues, one relating to persons and the other to conduct, they are consistent with each other and with the jury's manifest dissatisfaction with the inspector's testimony.

It is said the jury convicted itself of inconsistency by acknowledging there was evidence enabling it to declare the engine was not equipped with proper apparatus, and then by declaring the evidence was insufficient to enable it to state in what respect the apparatus was defective. (Finding 3, and findings 1 and 4.) There was evidence from which the jury could infer the engine was not properly equipped. Live coals not only escaped, but escaped in such form and size they could be carried all the way to plaintiff's barn, and still retain sufficient heat to ignite inflammable material there. Notwithstanding the speculative testimony of defendant's experts, there was abundant evidence to show this actually occurred, and the categorical answer "No" was properly returned to the third interrogatory. The evidence was not sufficient to allow the jury to specify the particular defects in the equipment, and answers to questions 1 and 4 properly stated the fact.

Nothing else is presented of sufficient importance to require special mention, and the judgment of the district court is affirmed.