No. 26,703.

F. A. WEIGAND, *Appellant,* v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Liability for Injury to Servant—Employee Thrown from Train by "Hoboes"—Connivance of Coemployees.* A railway company is not liable in damages to one of its employees because of injuries he sustained in being flung off a moving freight train by "hoboes" or strikers, nor would such liability arise if plaintiff had been able to prove that the train crew aided, abetted or connived at the assault made upon the plaintiff by the "hoboes" or strikers, in the absence of any showing that the railway company had notice of such hostile attitude of its train crew, and where the company had neither authorized nor countenanced such an act of violence as that which was perpetrated on plaintiff.

2. SAME—*Safe Place to Ride on Train—Proximate Cause of Injury.* The fact that plaintiff in pursuance of his duties as a repairer of freight cars was required to ride a few miles in a freight train on top of a carload of coal, in an inherently safe place for a railway employee in plaintiff's capacity, and not given an opportunity to ride in the caboose of the train, was not the proximate cause of his injury, and the defendant railway company's demurrer to plaintiff's evidence was properly sustained.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed October 9, 1926. Affirmed.

*Frank U. Russell, F. P. Hettinger, F. B. Hettinger* and *Aaron Coleman,* all of Hutchinson, for the appellant.

*Luther Burns, J. E. DuMars,* both of Topeka, *F. L. Martin* and *James N. Farley,* both of Hutchinson, for the appellee.

---

Master and Servant, 39 C. J. pp. 446 n. 35, 1280 n. 49, 1295 n. 91.

Weigand v. Chicago, R. I. & P. Rly. Co.

The opinion of the court was delivered by

Dawson, J.: The plaintiff, a temporary employee of the defendant, brought this action for damages for injuries sustained in being flung off a moving freight train by some unknown persons whom the plaintiff designated as "hoboes" or strikers.

The plaintiff's duty was to go from place to place on defendant's railway to make light repairs on freight cars. He carried with him a car jack and some other tools and a couple of buckets of axle grease. On September 28, 1922, plaintiff was directed by his superior to go to defendant's railway stations at Galva and McPherson to repair certain freight cars en route for California which had been sidetracked at those points. Plaintiff made short work of his task at Galva, and on inquiry the station agent advised him that an extra freight train westbound would soon arrive and that he could ride on that train to McPherson. When the train arrived the conductor proved to be an old acquaintance of plaintiff, and he asked him if he had an empty car in which he could place his tools. The conductor said he did not, and directed and assisted plaintiff to load the tools on top of a carload of coal, some four or five cars back of the engine. The train was a long one, forty or fifty cars, and the caboose was a considerable distance away, and the conductor was in a hurry to get on with his journey. He told plaintiff to climb on the coal car, which the latter did, shifting some lumps of coal to make himself a safe and comfortable seat to ride the seven or eight miles to McPherson.

Riding on the freight cars of the same train were some strangers, or "hoboes," trespassers without doubt, and perhaps railway strikers as plaintiff surmised. He noticed at Galva that the members of the train crew and the station agent spoke to them on terms of apparent familiarity. As the train proceeded towards McPherson the brakeman came along over the tops of the freight cars and said to plaintiff, "Aren't you afraid to ride on these trains without a guard or a gun?" Plaintiff replied: "I haven't any guard or any gun. I am attending to my own business, trying to do the company's business." Shortly afterwards, and as the train was approaching McPherson, the "hoboes" came over the tops of the cars, and without the slightest cause or excuse they seized the plaintiff and tossed him off the train. He was badly injured, but made his way to a house

near by and telephoned the sheriff and the station agent. Subsequent incidents which occupy considerable space in the record may need no attention.

Plaintiff brought this action against the railway company for damages, and alleged that the company was responsible for his injuries on the ground that its station agent and conductor—

"Unlawfully and willfully refused to let plaintiff ride in the caboose, . . . and then and there directed and commanded . . . and compelled plaintiff to climb upon said freight car and there ride to McPherson on said carload of coal."

Plaintiff also alleged that defendant's employees purposely allowed the "hoboes" to ride the train, and that they saw plaintiff thrown from the moving train—

"But defendant's said agents and employees unlawfully, negligently and in utter disregard of their duty and of all common considerations of humanity, did not stop the train nor give plaintiff any attention or care whatsoever, and this, although said defendant's said agents and employees well knew at the time that this plaintiff was in the employ of the defendant company and was then and there about the defendant's business."

While not squarely alleged in plaintiff's petition, it may be inferred from its allegations, and it is argued in plaintiff's brief, that defendant's employees, the agent at Galva and the enginemen and conductor and brakemen of the freight train, were hostile to plaintiff and in sympathy and collusion with the "hoboes" or strikers who flung plaintiff from the train.

A demurrer to plaintiff's evidence was sustained, the trial court ruling:

"Weigand being forced to ride on the car of coal was not either the direct or proximate cause of the injury."

Was this ruling correct?

Plaintiff was not an ordinary passenger. He was a railway employee and it was no hardship for him, on the forenoon of a fine September day, to ride a few miles on an open coal car. He testified that it was a safe place to ride.

"Well, I had gotten up on this car of coal and throwed some of this coal away and braced my feet up against the side and throwed my tools back some, and I thought I had a pretty safe place to ride so I wouldn't fall off.

"Q. What position did you take on that car of coal? A. I put some chunks away so I had a good place to sit down, and I put my feet up against the outside of the car, against the boards. . . .

"Q. The railroad track at Galva runs almost due east and west, doesn't it?  A.  Just about.  . . .

"Q. What direction did you face as you rode along on that car?  A.  I faced north.  . . .

"Q. And you rode along there comfortably on the car, did you, until you reached a point near the Santa Fe crossing?  A. Yes, sir.  I don't know how close I was to the crossing.

"Q. You were up there, comfortably seated on the car, weren't you?  A. Yes, sir; I was setting there.  There was no danger of me falling off.

"Q. You continued to ride there until you were shoved off by this unknown person?  A. Yes, sir.  . . .

"Q. The train ran how fast?  A. I thought it was going about twenty-five or thirty miles an hour.  I don't know.  . . .

"Q. You would guess it would be about twelve to fifteen minutes run from Galva to the point where you left the train?  A. I think so."

But for the independent, intervening molestation of the "hoboes" plaintiff would have accomplished his journey to McPherson without mishap.  So the fact that he was compelled to ride on the coal car was not the proximate cause of his injury.  His injury was caused by his being assaulted and flung off the train by three or four unknown strangers.  If it be urged that it was the duty of the defendant not to permit "hoboes" to ride its freight trains, still it could not reasonably have been anticipated that as a consequence of defendant's failure to perform that duty the "hoboes" would assault an employee of defendant and fling him from the train.  Moreover, let it be assumed, as plaintiff suspected, and as it is argued in his behalf, that the station agent at Galva and the train crew were hostile to plaintiff and in sympathy with the ruffian strangers, and that the brakeman made the inquiry of plaintiff to discover whether the latter had a weapon with which to defend himself if he were molested, and that the brakeman disclosed plaintiff's want of a weapon to the ruffians, and that defendant's employees connived at the assault made on plaintiff, they—the employees—and not their employer, would be liable civilly and criminally for their participation or connivance in that assault.  It is thoroughly settled law that when an employee departs even temporarily from his employment on some prank or project of his own of which his employer has no notice, and which the employer has neither authorized nor countenanced, the employer is not responsible.  The law books are full of such decisions.  Among our own cases may be cited: *Hudson v. M. K. & T. Rly. Co.*, 16 Kan. 470; *Crelly v. Telephone Co.*, 84 Kan.

19, 113 Pac. 386; *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621; *Roebuck v. Railway Co.*, 99 Kan. 544, 162 Pac. 1153; *Brown v. Railroad Co.*, 111 Kan. 338, 207 Pac. 196. See, also, *Carter v. Atlantic Coast Railway Co.*, 109 S. C. 119; *St. Louis-San Francisco Rly. Co. v. Mills*, 46 S. C. R. 520.

On no rational theory can this court discover a basis for subjecting the defendant railway company to liability for the injuries sustained by plaintiff. The unknown miscreants who assaulted him are clearly responsible. Less clearly, but perhaps sufficiently susceptible of proof to justify its submission to a jury, if plaintiff had been so inclined, was the question of the personal and individual responsibility of members of the train crew, and possibly the station agent; but the record discloses no evidence and suggests no rule of law on which a liability can be fastened upon the defendant railway company, and the judgment of the trial court must be affirmed.