No. 27,020.

HARRY F. KASTRUP, *Appellant* and *Cross Appellee*, v. THE YELLOW
CAB AND BAGGAGE COMPANY, *Appellee* and *Cross Appellant*.

(260 Pac. 635.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Liability for Assault of Servant—Scope of Employment*. In an action to recover damages from a principal and master because his agent and servant in endeavoring to collect a claim from another assaulted and beat him, the court in a specific instruction left out the essential element that the liability of the principal and master depended upon whether the agent, when he committed the .assault, was acting within the scope of his authority expressly conferred on him by his principal or fairly implied in the nature of his employment and because of the omission the court subsequently set aside a verdict for plaintiff and granted a new trial: *Held*, that the court was warranted in granting a new trial.

2. TRIAL—*Instructions—Ineffective Attempt to Cover Principles in One Charge*. Where the court in an earlier general instruction abstractly stated the correct rule of law, but in a later one applicable to the facts in this particular case undertook to group and state all the elements necessary to a recovery against the principal, leaving out an essential element, the earlier general instruction in which the correct rule was abstractly stated, did not operate to cure the inaccurate and incomplete one given at the end of the charge.

3. MASTER AND SERVANT—*Liability for Assault on Servant—Evidence*. The refusal of the court to enter judgment for defendant on the evidence and findings is sustained.

Appeal from Shawnee district court, division No. 3; OTIS E. HUNGATE, judge. Opinion filed November 5, 1927. Affirmed.

*Harry W. Colmery* and *C. B. Randall*, both of Topeka, for the appellant and cross appellee.

*Guy L. Hursh*, of Topeka, for the appellee and cross appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an action brought by Harry F. Kastrup to recover damages from the Yellow Cab and Baggage Company for personal injuries inflicted upon him by Earl Harris, an employee and agent of the defendant, a verdict was returned in favor of the plaintiff awarding him $3,250 as damages and with it returned answers to special questions that had been submitted. When the

Instructions, 14 R. C. L. 813. Master and Servant, 51 L. R. A. n. s. 920; 24 A. L. R. 545; 40 A. L. R. 1212; 18 R. C. L. 807; 39 C. J. pp. 1306 n. 10, 1307 n. 15, 1359 n. 51. New Trial, 29 Cyc. pp. 786 n. 87, 788 n. 94. Trial, 38 Cyc. pp. 1598 n. 22, 1782 n. 82, 1626 n. 79.

evidence was closed the defendant moved the court to direct a verdict for the defendant, which motion was overruled. After verdict and special findings were returned, the defendant asked the court to set aside several of the special findings, but this application was denied and the findings were approved. The defendant then moved for judgment in its favor upon the special findings, and this motion was likewise denied. A motion for a new trial was presented for error committed in an instruction given by the court, and this motion was allowed on the ground that instruction number eleven was prejudicially erroneous in that it omitted to state that in order for the jury to find for the plaintiff it must first find that when Harris committed the assault he was acting within the scope of his authority expressly conferred on him by the defendant or fairly implied in the nature of his employment. This ruling is assigned as error by the plaintiff and the defendant in a cross appeal alleges error by the court in the several adverse rulings on motions made by it.

It appears that plaintiff was employed as a cab driver for defendant, which requires its drivers to give a bond or deposit $50 in advance to meet any damage done to the cab by the driver. Plaintiff was unable to make the full deposit, but he was permitted to give a post-dated check for $15 for that purpose, and to allow the company to deduct the balance from week to week from his pay checks. After three weeks of service a fender of the car driven by plaintiff was damaged, and he was called on by Harris, the superintendent, to pay the check for $15. Plaintiff testified that he offered to pay the damage if an itemized statement of the same was given to him, while Harris testified that he made an absolute refusal to pay it. They went together to the headquarters of the defendant, where there was a further discussion of the claim, and plaintiff still insisted upon an itemized statement of the damage, while Harris was insisting on immediate payment. Plaintiff stated that Harris then hit him a hard blow on the head, causing him to fall on a cement floor, and that while he was down jumped upon him, striking him repeatedly on the head, gouging his eyes and thrusting his head violently against the cement floor, repeating all the time, "Will you pay, will you pay?" Harris testified, on the other hand, that he was held to the company for the amount of the unpaid check and was insisting on payment, and when plaintiff refused to pay, he told plaintiff that he would go to the office of the county

attorney and procure a warrant of arrest against him, and started to do so. Whereupon plaintiff said he would go with him; that plaintiff tried to get in the car with Harris, when an encounter ensued and the fight proceeded to serious injuries of plaintiff.

At the trial defendant contended that the employment of Harris by the defendant did not contemplate the use of force. That the assault on plaintiff because of his failure to pay the check was outside the scope of the employment of Harris; that the personal attack on the plaintiff, assuming it to have been made, was not authorized by defendant, nor fairly implied by the nature of the employment. The following are some of the special findings returned by the jury:

"1. Was Earl Harris, at the time of and just before the altercation complained of in this case, liable to the defendant company in the sum of $15, for having accepted from plaintiff a check for $15 in lieu of a bond? A. No.

"2. In whatever may have been done by Earl Harris to collect the amount of a check from the plaintiff, was he acting in his own behalf to collect a debt for which he was liable to the defendant company? A. No, he was acting for the company.

"3. Had Earl Harris, just before the altercation, left the office of the defendant company for the purpose of getting his automobile and going to see the county attorney in an attempt to have the plaintiff prosecuted for the giving of a worthless check? A. Yes.

"4. Was Earl Harris in any manner employed or authorized by the defendant company to assault or beat any persons from whom he might attempt to collect claims due or claimed to be due to the defendant company? A. No.

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

"6. Did the altercation between Earl Harris and the plaintiff occur because plaintiff assaulted or beat or attempted to assault or beat Earl Harris or to pull said Earl Harris out of his automobile? A. No.

"7. Was Earl Harris the agent of the defendant on January 10, 1924? A. Yes.

"8. If you answer question 7 in the affirmative, then state whether or not it was the duty of Earl Harris: (a) To hire and discharge cab drivers for the defendant? A. Yes. (b) To obtain bond from the plaintiff and other cab drivers in defendant's employ? A. Yes.

"9. Did Earl Harris, while acting as the agent of the defendant, assault, beat and strike plaintiff's head against the cement floor and hit plaintiff in the face and eyes? A. Yes.

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

"12. Did Earl Harris, while acting as the agent of the defendant, beat and strike the plaintiff to enforce the payment of the check? A. Yes."

The instruction held by the court to be erroneous is as follows:

"If you find from the preponderance of the evidence that Earl Harris was in the employ of defendant, and was authorized by it to collect the check or bond referred to in the evidence, and committed the alleged assault and battery

upon the plaintiff as a means to enforce the payment by plaintiff of said check or bond, and you further find plaintiff was injured thereby, then the defendant in this case would be liable, but if you find that Earl Harris committed the alleged assault and battery upon the plaintiff because of the refusal of plaintiff to pay said check, and because he was enraged thereby, and not as a means of compelling the plaintiff to pay said check or bond, then the defendant would not be liable."

The court, as has been stated, held that the omission of a statement in the instruction to the effect that before they could find against the defendant the jury must first find whether Harris acted within the scope of his authority expressly conferred on him, or fairly implied from the nature of the employment. On the other hand, it is contended by the plaintiff that granting the correctness of the rule with respect to the liability of the defendant, other instructions, to wit, the seventh, ninth and tenth, fairly include the principle mentioned by the court and which was not repeated in the eleventh.

"7. A principal or master is liable for injuries to third persons inflicted by its agent or servant when the act of the agent or servant causing the injury is directly authorized by the principal or master or when the act of the servant or agent is done in the line of his duties while engaged in the business of the principal or master and done within the scope of his employment, and this is true even though the act of the agent or servant is willfully or maliciously done, but a principal or master is not liable when the agent or servant would not be liable if he had acted in his own behalf instead of as an agent or servant of another."

"9. . . . The test of whether an act is within the scope of the agent's or servant's employment is not whether it was done during the existence of the employment, but whether the act complained of was committed by the authority of the principal or master expressly conferred or fairly implied from the nature of the employment and the duties incident to it. If an employee steps aside from his employer's business, for however short a time, to do an act not connected with his employment, the relation is for the time suspended, and in that event the principal or master is not liable for the acts done. A principal or master is responsible for the tortious acts of his agent or servant where such acts are incidental to and done in the furtherance of the business of the principal or master, even if such acts are done willfully and in excess of the authority conferred, and is responsible for the manner of the agent in the execution of the authority and for the wrong of the agent in selecting the means by which the authority is executed.

"10. While an employer is responsible for the wrongful acts of his employee done in the scope of the employment, yet if any act is done by such employee solely to accomplish the employee's own purpose or device, although in an interval of his regular service, the employer is not liable, for if the servant steps aside from the master's business, for however short a time, to do an act not

connected with such business, the relation of master and servant is for the time suspended, and this is true although the act was intended to promote the master's interests."

Although the court refused to set aside the special findings of the jury, it is manifest that in granting a new trial the court was not satisfied with the result and evidently determined that it was due to error committed in giving the eleventh instruction which omitted an essential element of liability. It is practically conceded that the defendant would not be liable unless it was shown that the assault by its agent was committed within the scope of his employment, and that he was expressly authorized to use force or violence or that such authority was fairly implied from the nature of his employment. The principle has been often stated and applied in many decisions, among which we may cite: *Crelly v. Telephone Co.*, 84 Kan. 19, 113 Pac. 386; *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621; *Brown v. Railroad Co.*, 111 Kan. 338, 207 Pac. 196; *Weigand v. Chicago, R. I. & P. Rly. Co.*, 121 Kan. 610, 249 Pac. 615.

Plaintiff contends that the defect in the eleventh instruction was cured by the statements made in earlier instructions. It is true, as plaintiff contends, that all of the law of a case need not be stated in a single instruction, and if an omission in an instruction is supplied in others so that all taken together fully and consistently present the law applicable to the issues the jury are not likely to be misled. While the court in the seventh, ninth and tenth instructions recognized that the master would not be liable for an assault or injury inflicted by an agent by authority of the master unless expressly conferred or fairly implied from the nature and incidents of the employment, it will be observed that the court was there dealing with an abstract principle. In the latest instruction the court was treating the case in the concrete, the particular case in hand, and had undertaken to state all the elements necessary to a recovery against the defendant. In that instruction the jury were told that if Earl Harris was in the employ of the defendant, and was authorized to collect the check, and committed the assault and battery upon the plaintiff as a means to enforce the payment by plaintiff of the check, and further found that plaintiff was injured thereby, then the defendant would be liable. That was the last statement of the court on the ground of liability, and since the court undertook to group in this instruction all the elements necessary to a recovery, it is plain that the jury

may have been misled. There was no question but what Harris was in the employ of the defendant and authorized to collect the check, no question but that his assault on the plaintiff caused injury, and under the last instruction the jury could find against the defendant regardless of the authority of the defendant to use force or violence in enforcing payment. The rule stated in that instruction was inconsistent with that abstractly stated in the earlier ones, and when the court returned to the subject at the end of the charge, and gave an additional and different instruction, the jury may have inferred that the court intended as a last word to qualify the general instructions previously given. Again, the instructions being materially in conflict, the jury must have been at sea as to which rule they should follow, and no one can say which rule was applied in making their findings. It was not unnatural that they should conclude that the specific instruction dealing with the facts of this particular case should govern rather than the general instruction. In speaking of the claim that an erroneous instruction may be cured by another which is correct, it has been said:

"But while an instruction which is inaccurate or incomplete, may be cured by subsequently supplying the defect or accurately stating the law, yet if it is erroneous in that it states the wrong rule by which the jury are to be governed, it is not cured by another instruction stating the right rule as it is impossible to tell by which rule the jury was actually controlled in reaching its verdict." (14 R. C. L. 813.)

We think no error was committed in granting a new trial.

In a cross appeal defendant urges that the court committed error in overruling its motions which have been mentioned, and especially its motion for judgment on the evidence and findings. It cannot be said that there was such a lack of evidence as to require judgment upon the evidence, and as to special findings it must be said that they were returned under improper instructions. In one finding the jury said that in the use of force to collect the check Harris was acting for the defendant, and in another that he was not employed or authorized to assault or beat a person from whom he attempted to collect a claim. There is apparent conflict in the findings, and in view of the record in the case we think it should be retried upon proper instructions.

The judgment is affirmed.