No. 35,862

Louis V. Sams, Executor of the Last Will and Testament of Dolpha Green Albert Sams, Deceased, and Mary Kathryn Sams Bach, Administratrix With the Will Annexed of the Estate of Dolpha Green Albert Sams, *Appellees,* v. Commercial Standard Insurance Company, *Appellant.*

(139 P. 2d 859)

Opinion filed July 10, 1943.

*Frank C. Baldwin,* of Concordia, argued the cause, and *Charles L. Hunt,* of Concordia, was on the briefs for the appellant.

*R. L. Hamilton,* of Beloit, argued the cause for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover damages for wrongful death suffered in an automobile accident and for injuries to decedent's car which was being driven by her at the time of such accident.

Certain facts, as to which the evidence disclosed no serious controversy, were as follows: On August 18, 1941, Mrs. Dolpha Sams, the deceased, who lived with her husband in Denver, Colo., and was the mother of three adult children, all of whom were married, was driving her LaSalle car, the front part of which was 6 feet and 2 inches wide and the rear 6 feet and 4 inches wide, from her home

in Denver to Kansas City, Kan. She was accompanied by her daughter, Mrs. Bach, who was driving a Buick automobile. These people left Denver about six o'clock a. m., mountain time, and from there traveled—the daughter at all times driving ahead of the decedent—a distance of about 425 miles to the place of the collision, two and one-half miles northwest of Glasco, Kan., on U. S. highway 24, where Mrs. Sams arrived at about six o'clock p. m., central time. On the same date one Boswell was driving a semitrailer oil transport outfit owned by Stanley Mastin of Beloit and covered by an insurance policy issued by the defendant, Commercial Standard Insurance Company. The transport, driven by Boswell, was en route from Hutchinson to Beloit by the way of Salina and was traveling in a westerly direction on U. S. highway 24 at the time of the collision. The outfit consisted of a 1941 Chevolet tractor to which was attached a trailer or truck. The tractor had a wheel base of 157 inches and was 7 feet and 5 inches in width. The trailer or truck carried a Butler gasoline tank, was 18 feet long and 7 feet and 11 inches in width. The distance from the front wheels of the tractor to the back wheels of the trailer was approximately 27 feet and from the back wheels of the tractor to the back wheels of the trailer it was 13 to 14 feet. The length of the entire outfit from the front bumper of the tractor to the skirt of the rear of the trailer was between 30 and 32 feet. At the time of the accident the weight of the LaSalle car was approximately 3,830 pounds and the weight of the transport, which was loaded with about 2,700 gallons of gasoline, was approximately 15 tons. U. S. highway 24 on both the east and west side of the bridge where the collision occurred was a mat or black-top road and the bridge, although there is some variance in the testimony, can be stated to be from 17 feet and 10 inches to 17 feet and 11 inches in width north and south and from 27 feet to 27 feet and 10 inches in length east and west. On the east side, 300 feet east of the bridge, in the direction from which the transport was approaching, there was a narrow-bridge sign on the north side of the road, and on the west side, 232 feet west of the bridge in the direction from which Mrs. Sams was approaching there was a narrow-bridge sign on the south side of the road. Approaching the bridge from the east the driver of the transport had climbed a long gradual hill, the top of which is about four-tenths of a mile from the bridge and from that point proceeded down a gradual slope to and upon the bridge with a clear view of the road to the west for a distance

of more than one mile. Mrs. Sams in approaching the bridge from the west traveled a comparatively level strip of road, more than a mile in length, before reaching the bridge and had a clear view of the road to and on to the east of the bridge for a distance of four-tenths of a mile. There was nothing to prevent either driver from having a clear view of the highway or any vehicles thereon for the distance herein described, and each had an opportunity to observe the bridge, the narrow-bridge signs, the width of the traveled portion of the road and the condition thereof at the time both drivers approached and entered upon the bridge. The LaSalle car and the transport collided on the bridge and as a result of the collision both of the vehicles were severely damaged and Mrs. Sams was instantly killed. At the time of the collision the weather was clear and the sun was shining and the road was dry.

The evidence as to how the collision occurred was contradictory and cannot be reconciled. Briefly, since it is not necessary to relate it in detail, it can be stated, although there was testimony to the contrary, there was some evidence to show the following: The drivers of both vehicles immediately prior to reaching the bridge were on their proper side of the road and each attempted to cross the bridge while traveling at a speed of approximately 55 miles per hour. Immediately prior to reaching the bridge the driver of the transport swung over to the south of the center line of the bridge and at the time of the collision the south side of his truck was 6 feet and 6 inches from the south banister of the bridge. The left front wheel of the LaSalle automobile came into contact with the rear dual wheel of the tractor portion of the transport, thereby causing the wreck which resulted in the death of Mrs. Sams and severe injury to both vehicles. The point of impact, with reference to the length of the bridge, was 13 feet and 5 inches east of the west end thereof.

On this evidence, elaborated as to details by the testimony of divers witnesses, the jury answered special questions and returned a verdict for plaintiffs in the sum of $5,675, on which after the filing and overruling of certain post-trial motions to which reference will be made, jugment was rendered against defendant, Commercial Standard Insurance Company. The appeal here is from that judgment.

One of appellant's specifications of error is the refusal of the trial court to submit special questions to the jury as requested by it.

Appellant's brief contains no discussion of that assignment of error. Under those circumstances, this court has held such specifications of error are waived (*Tri-State Hotel Co., Inc., v. Southwestern Bell Telephone Co.*, 155 Kan. 358, 125 P. 2d 728). Notwithstanding, we have examined the record and find no error in the refusal of the trial court to submit the special questions in the identical form requested by appellant. Nine of the twelve questions as requested were submitted verbatim. Other questions submitted substantially covered the information sought to be elicited by the other three and in our judgment appellant was not prejudiced by such refusal.

Another of appellant's specifications of error is the overruling of its motion to set aside special findings of the jury. Appellant strenuously contends that the answers returned by the jury to such questions were not only unsupported by the evidence but were in such form as to clearly indicate capricious and unfair conduct of the jury in so answering them. This objection is directed against eleven of the findings returned in answer to the fifteen special questions submitted and to here quote such special questions and discuss in detail each of such answers would require more time and space, in our opinion, than this objection merits. We have, however, carefully examined the record and our examination discloses all of the answers objected to because of the lack of any evidence are supported by some evidence, although contradicted, which the jury had a right to believe. As to the other questions objected to by appellant as evasive, untruthful and contradictory, we have concluded, even though it be conceded the jury might properly have returned answers which would have been more satisfactory in the light of the testimony, such answers when construed together were not so contradictory as to require them to be set aside and do not evidence such an unfair attitude as to require that action. Jurors who are not versed in the law cannot be held to the strict rule as to the use of language to which a more highly trained person would be held and courts should not set aside answers to special questions on the basis of capricious and unfair conduct of the jury unless they are absolutely convinced such answers reflect that attitude. This is particularly true, on appeal, where the trial court, which has had an opportunity to observe the demeanor and conduct of the jury, has passed upon and approved the special findings. This court has held that if there is any inconsistency in answers to special questions it is the duty of the court to harmonize them where it is reason-

ably possible to do so (*Montague v. Burgerhoff*, 152 Kan. 124, 102 P. 2d 1031; *House v. Wichita Gas Co.*, 137 Kan. 332, 20 P. 2d 479; *Leinbach v. Pickwick-Greyhound Lines*, 138 Kan. 50, 23 P. 2d 449 and *Jordan v. Austin Securities Co.*, 142 Kan. 631, 51 P. 2d 38). Also, that in considering answers of the jury to special questions submitted the court is not permitted to isolate one answer and ignore others but is required to consider all of them together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. (*Dick's Transfer Co. v. Miller*, 154 Kan. 574, 119 P. 2d 454.) The reason for construing special findings so as to harmonize them with the general verdict, if possible, is that every reasonable presumption must be indulged in favor of the general verdict. (*Waldner v. Metropolitan Life Ins. Co.*, 149 Kan. 287, 289, 87 P. 2d 515.) Measured by these rules we are unable to conclude the special findings were so contradictory as to justify the setting aside of any of them. Nor can we conclude the trial court committed error in overruling the motion for judgment on the special findings notwithstanding the verdict, on the ground such findings were contrary to the general verdict, destroy the plaintiffs' alleged cause of action and show upon their face the plaintiffs are not entitled to recover in this action. For the purpose of testing a ruling on a motion for judgment on the special findings *non obstante veredicto*, that motion admits there was evidence to support such special findings (*Haney v. Canfield*, 152 Kan. 597, 600, 106 P. 2d 662; *Witt v. Roper*, 149 Kan. 184, 187, 86 P. 2d 549; *Eldredge v. Sargent*, 150 Kan. 824, 829, 96 P. 2d 870 and *Lewis v. Dodson*, 151 Kan. 632, 635, 100 P. 2d 986), and unless the special findings clearly overthrow the general verdict the latter must be permitted to stand (*Taggart v. Yellow Cab Co. of Wichita*, 156 Kan. 88, 131 P. 2d 924). With one exception we find nothing in the special findings which could be construed as requiring a judgment in favor of appellant *non obstante* the verdict. The exception referred to has reference to the answer to question ten. That question read: "Did she slacken her speed at any time thereafter before she met the transport, and if so, to what speed?" The answer of the jury to this question was "don't know." Ordinarily when a jury answers a special question "we do not know," the answer is properly construed against the party on whom rests the burden of proof with respect to the matter to which the question relates. (*Schwab v. Nordstrom*, 138 Kan. 497, 27 P. 2d 242, and *Darrington v. Campbell*,

150 Kan. 407, 94 P. 2d 305.) This rule is subject to the limitation that where the answer to the question of necessity requires a finding as to the negligence or lack of negligence of a deceased person because of a failure to exercise due care there exists a presumption the decedent exercised due care for the protection of her own life which must be overcome by evidence. It must be remembered the only living eyewitness to this accident and the only living witness who could and did testify as to whether the decedent slackened her speed at any time before meeting the transport was Boswell, the driver of such transport, who was coming down the incline from the east at a speed the jury found was 55 miles per hour and who was preparing to drive the transport upon the bridge. He testified in substance decedent was driving about 70 miles an hour and did not decrease her speed, but the jury was not required to believe his testimony and apparently did not do so. Without his testimony, or if in the exercise of their judgment they believed it was impossible for him to make a truthful estimate of the speed at which the decedent was traveling, and they saw fit to disbelieve it, there was no testimony on which the jury could return a finding as to whether or not she slackened her speed. There was, therefore, not only no evidence requiring a different answer to this question but no evidence to overcome the presumption the decedent was exercising due care for her own safety. Under such circumstances, notwithstanding the rule heretofore mentioned, we do not think this finding can be construed as meaning the decedent did not slacken her speed. Moreover, this answer standing by itself would not of necessity preclude a recovery in the action if from all the other evidence, and the circumstances disclosed by it, the jury believed and found the decedent, in the exercise of due care was not required to have slackened her speed before the collision with the transport. Under all the circumstances of this case as disclosed by the record we cannot say it was error for the trial court to overrule the appellant's motion for judgment *non obstante.*

Other specifications of error relate to failure of the court to give certain instructions requested by appellant and to instructions given and alleged to be erroneous. We first direct our attention to three requested instructions, each of which was refused, having carefully examined and compared them with the instructions submitted to the jury. This court has repeatedly held it is not error to refuse to give requested instructions, where the instructions given by the trial

court cover the same ground. (*Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511; *Intfen v. Hutson,* 145 Kan. 389, 65 P. 2d 576; *Doyle v. City of Herington,* 142 Kan. 169, 172, 45 P. 2d 997 and *Scheve v. Heiman,* 142 Kan. 370, 47 P. 2d 70.) Our consideration of the instructions given convinces us they fairly included in impartial language the substance of those requested by appellant. There was, therefore, no error in the trial court's refusal to give such requested instructions in the exact form and the precise language requested by appellant.

We next give our attention to a contention strenuously urged by appellant and entitled to consideration by reason of specifications of error charging the court erred in giving erroneous instructions to the jury and in overruling its motion for a new trial, one of the grounds of which was erroneous instructions of the court. It is claimed, and while the parties are not in accord on the subject must be conceded, since we have before us, after having given appellant permission to supplement its abstract, a certified copy of the proceedings had in the district court, that after the appellant's counsel had concluded his argument to the jury, the trial court, without having submitted the same to counsel on either side and without having given them a reasonable time to suggest modifications thereof, gave the jury an instruction which is designated as instruction No. 27 and which reads as follows:

"You are instructed that if the truck driven by the driver, Boswell, was on his right side or north side of the road just before he came upon the bridge and Mrs. Sams saw it there then she had a right to presume that he would stay on his right side of the bridge and she would not be guilty of contributory negligence in driving upon the bridge on her right side of the bridge."

Appellant insists that the giving of instruction No. 27 was an erroneous statement of law as applied to the facts of this case, and given as it was, at the conclusion of the defendant's argument to the jury, was devastating and ruinous to its defense of contributory negligence, since its effect was to absolve Mrs. Sams of all negligence prior to the time she observed the transport entering the bridge.

It should be here noted that our examination of the instructions given prior to the argument discloses they were proper and fairly stated the obligations and duties resting upon the drivers of each of the vehicles with respect to their proper operation upon the highways and the duties and obligations resting upon each of them with respect to other persons who were driving upon such highways

at the time they were operating their vehicles thereon. Therefore, if there was error in the instructions it must be found in instruction No. 27, given under the circumstances heretofore described.

Appellees challenge the right of appellant to raise any question as to instruction 27, on the ground no objection was made by appellant to such instruction at the time it was given and insist such instruction contained a correct statement of law as approved by this court in *Dick's Transfer Co. v. Miller*, 154 Kan. 574, 578, 119 P. 2d 454. We pass for the moment appellees' challenge of the right of appellant to now object to the instruction so that we may dispose of their contention such instruction contained a correct statement of the law as approved by this court. In the case cited by appellant the court was not considering instructions but a motion for judgment *non obstante veredicto*. All we decided in that case on the question referred to by appellees was that under the rules applicable to the determination of such a motion answers to certain special questions did not as a matter of law find the plaintiff was guilty of contributory negligence and entitle the defendant to judgment notwithstanding the verdict. That decision is in no sense authority for appellees' contention that instruction 27, standing alone, was a correct statement of the law applicable to a situation such as was referred to therein.

We turn now to appellees' challenge of the right of appellant to object to instruction 27. That the statute contemplates the submission of instructions to counsel for their consideration before submission of a case to a jury and the giving of such instructions before argument is clearly evidenced by G. S. 1935, 60-2909 (5), (7). However, it has been held, notwithstanding earlier cases to the contrary (*Foster v. Turner*, 31 Kan. 58, 1 Pac. 145) that the district court has a large discretion in the matter of giving additional instructions after the jury has retired for deliberation and that only in the event of abuse, resulting in prejudice, will an exercise of that discretion be ground for reversal. (*Bray v. Railway Co.* 111 Kan. 60, 205 Pac. 1112; *Carter v. Becker*, 69 Kan. 524, 77 Pac. 264.) Although this is the rule with respect to instructions after the jury has retired, it is interesting to note that *Bray v. Railway Co.*, supra, which expressly overruled the third paragraph of the syllabus of the opinion to the contrary in *Foster v. Turner*, supra, did not disturb the rule of law announced in the second paragraph of the syllabus of that case and we now have at least two early decisions

in this state which have not been overruled holding—and the statute with reference to when instructions should be given to the jury was the same then as it is now—that notwithstanding the provisions of the code require the court to instruct the jury before the argument of counsel, such argument and some other things may sometimes justify particular instructions afterward but such instructions should not go beyond what is fairly authorized by the argument of counsel or some other good reason. (See *Foster v. Turner,* supra; *Kellogg v. Lewis,* 28 Kan. 535.) These cases, although they recognize the propriety of giving instructions during or after the argument, are, to say the least, indicative of the fact the trial court should be able to advance some sound reason for its action at that particular time in order to successfully avoid a charge of error based on abuse of discretion. This would seem to be particularly necessary in a case where, after counsel for one litigant had closed his argument, an instruction, general in character, is read to the jury without having been submitted to counsel for approval and under circumstances which could easily give the jury the impression the major portion of the argument could not be reconciled or harmonized with the instruction just submitted. Without attempting to pass upon that question in this case it can be stated we can conceive of a situation where such action would be so prejudicial to the rights of a litigant as to amount to an abuse of discretion.

In our consideration of appellees' position that instruction 27 cannot be reviewed it must be conceded the general rule is that where no objection is made to the giving of an instruction during the trial and no request was made for its modification or clarification and such instruction is not clearly erroneous a litigant cannot be heard to complain on appeal. (*Montague v. Burgerhoff,* 152 Kan. 124, 128, 102 P. 2d 1031; *Lukens v. First National Bank,* 151 Kan. 937, 101 P. 2d 914; *Hogan v. Santa Fe Trail Transportation Co.,* 148 Kan. 720, 725, 85 P. 2d 28; *Jones v. A. T. & S. F. Rly. Co.,* 148 Kan. 686, 695, 85 P. 2d 15; *Lambert v. Rhea,* 134 Kan. 10, 4 P. 2d 419, and *Foley v. Crawford,* 125 Kan. 252, 264 Pac. 59.) Nor do we think, as contended by appellant, that any language in our decisions in *Sowers v. Wells,* 154 Kan. 134, 136, 114 P. 2d 828; *Abramson v. Wolf,* 138 Kan. 856, 859, 28 P. 2d 975, and *Burns v. Hunter,* 126 Kan. 736, 737, 271 Pac. 398, can be construed to mean that a litigant who fails to object to instructions of the character referred to in the cases heretofore cited can for the first time make his objections on

a motion for new trial and thereby avoid the force of the rule in those cases announced. It must, however, also be conceded the rule does not apply to an instruction which is in itself erroneous and an appellant is not estopped from complaining of it as error by not having objected to it at the time it was given. (*Richardson v. Business Men's Protective Ass'n,* 129 Kan. 700, 284 Pac. 599; *Doyle v. City of Herington,* 142 Kan. 169, 173, 45 P. 2d 890, and *Lukens v. First National Bank,* supra.)

Our consideration of appellees' position on the right to appellate review of the instruction convinces us it cannot be sustained notwithstanding the existence of the general rule to which they refer and which we have here discussed. The trouble with their position is the factual situation does not permit the application of that rule. In fact, most of the decisions cited do not contemplate such a situation. They deal with the position of a litigant in cases where the instructions were given to the jury before argument and after they have been submitted to his counsel for inspection. The language in G. S. 1935, 60-2909 (7) which reads: "After the instructions have been given to the jury, the case may be argued," must mean something, else it would have been omitted from the code of civil procedure. We think one construction which must be placed upon that language without for a moment minimizing the force of the rule is, where an instruction is submitted at the close of an argument, suddenly and without opportunity of inspection, where counsel has not had a chance to formulate a proper objection, and where the situation is such that any objection he makes might be misconstrued by the jury to the prejudice of his client, that the same formality contemplated by the rule in cases where counsel have had an opportunity to object after submission of instructions is not required and any statement tending to indicate an objection to the instruction so given is sufficient to insure counsel the right of appellate review if on the motion for new trial his objection to the instruction, or instructions, so made is called to the attention of the trial court. Here, counsel for appellant, after the giving of such an instruction and when the trial court, basing our statement on the frank admission of such counsel, had given him an opportunity to discuss the instruction just submitted, made the statement, "I finished my argument." We consider this statement under the existing circumstances as tantamount to the making of the objection contemplated by the rule and when later renewed on a motion for new trial was sufficient to obtain

appellate review of the instruction, irrespective of whether it was so erroneous as to entitle it to review without any objection having been made.

We pass now to consideration of the language of instruction 27 as heretofore quoted verbatim. What was its effect in the instant case under the circumstances and conditions prevailing at the time it was given?

As heretofore stated, the other instructions which had been given before argument appear to have fairly stated the factual situation disclosed by the evidence and the law applicable thereto. This instruction told the jury that Mrs. Sams would not be guilty of contributory negligence in driving upon the bridge upon her right side if just before the driver of the transport came upon the bridge the transport was on its right side of the road and she saw it there. Under the circumstances, it unduly emphasized one factual situation to the exclusion of others. For all practical purposes it wiped out and nullified instructions theretofore given which set forth the duties and obligations resting upon Mrs. Sams as the driver of a car upon the highway under existing conditions. Its language was inconsistent and could not be harmonized with the language used in other instructions. It had the effect of absolving the decedent of all blame prior to the time she observed the transport entering the bridge. It, in fact, took away from appellant the defense of contributory negligence and practically told the jury the defendant had no defense. In announcing these conclusions we are not unmindful of the fact the instructions given in advance of the argument contained the admonition that all the instructions should be considered as a whole and no one instruction should be considered separately and apart from the others, but the record fails to disclose this admonition was given when instruction 27 was submitted. We are also mindful that counsel for appellant made mention of the fact the jury had theretofore been so instructed. But the statement of counsel as an adversary was not the statement of the court and could not serve as a substitute. Even so, if the admonition had been given, it would not have been sufficient to cure the error in the instruction as given. In a somewhat extended examination of the decisions for the purpose of finding a precedent to govern a situation such as confronts us on this appeal, counsel for the parties having failed to cite one, we find one case which we think is determinative and several others which are indicative of the correctness of the rule

which we are impelled to conclude is applicable to and governs the situation under the facts, circumstances and conditions here related. In *Kastrup v. Yellow Cab and Baggage Co.*, 124 Kan. 375, 379, 380, 260 Pac. 635, we held:

"Where the court in an earlier general instruction abstractly stated the correct rule of law, but in a later one applicable to the facts in this particular case undertook to group and state all the elements necessary to a recovery against the principal, leaving out an essential element, the earlier general instruction in which the correct rule was abstractly stated, did not operate to cure the inaccurate and incomplete one given at the end of the charge." (Syl. ¶ 2.)

And in the opinion said:

"Plaintiff contends that the defect in the eleventh instruction was cured by the statements made in earlier instructions. It is true, as plaintiff contends, that all of the law of a case need not be stated in a single instruction, and if an omission in an instruction is supplied in others so that all taken together fully and consistently present the law applicable to the issues the jury are not likely to be misled. While the court in the seventh, ninth and tenth instructions recognized that the master would not be liable for an assault or injury inflicted by an agent by authority of the master unless expressly conferred or fairly implied from the nature and incidents of the employment, it will be observed that the court was there dealing with an abstract principle. In the latest instruction the court was treating the case in the concrete, the particular case in hand, and had undertaken to state all the elements necessary to a recovery against the defendant. In that instruction the jury were told that if Earl Harris was in the employ of the defendant, and was authorized to collect the check, and committed the assault and battery upon the plaintiff as a means to enforce the payment by plaintiff of the check, and further found that plaintiff was injured thereby, then the defendant would be liable. That was the last statement of the court on the ground of liability, and since the court undertook to group in this instruction all the elements necessary to a recovery, it is plain that the jury may have been misled. There was no question but what Harris was in the employ of the defendant and authorized to collect the check, no question but that his assault on the plaintiff caused injury, and under the last instruction the jury could find against the defendant regardless of the authority of the defendant to use force or violence in enforcing payment. The rule stated in that instruction was inconsistent with that abstractly stated in the earlier ones, and when the court returned to the subject at the end of the charge, and gave an additional and different instruction, the jury may have inferred that the court intended as a last word to qualify the general instructions previously given. Again, the instructions being materially in conflict, the jury must have been at sea as to which rule they should follow, and no one can say which rule was applied in making their findings. It was not unnatural that they should conclude that the specific instruction dealing with the facts of this particular case should govern rather than the general instruction. In speaking of the claim that an

erroneous instruction may be cured by another which is correct, it has been said:

" 'But while an instruction which is inaccurate or incomplete, may be cured by subsequently supplying the defect or accurately stating the law, yet if it is erroneous in that it states the wrong rule by which the jury are to be governed, it is not cured by another instruction stating the right rule as it is impossible to tell by which rule the jury was actually controlled in reaching its verdict.' (14 R. C. L. 813.)" (p. 379.)

See, also, *Schick v. Warren*, 82 Kan. 90, 107 Pac. 536, which is applicable to certain phases of the situation here discussed.

In *New York Life Ins. Co. v. Hunter*, 32 F. 2d 173, it was held:

"If special instructions authorizing verdict for plaintiff if certain facts were found in her favor in action on life insurance policy were erroneous, prejudice would not be removed by general instruction given at outset which was qualified by such special instructions." (Syl. ¶ 1.)

To the same effect is *Macklin v. Construction Co.*, 326 Mo. 38, 31 S. W. 2d 14:

"Instruction omitting necessary element is erroneous, and cannot be cured by including omitted elements in other instructions, unless such instructions are properly referred to." (Headnote 16.)

Instruction 27 as given was out of harmony with the other instructions, and resulted in giving emphasis to it without regard for the others to the probable disadvantage of defendant and in our opinion resulted in an unfair trial. Standing alone, as we conclude it did, when given at the time and under the circumstances here related it was erroneous and its submission to the jury under such conditions was error and required the granting of a new trial.

Appellant contends the undisputed evidence convicts the decedent of contributory negligence as a matter of law and requires a directed judgment in its favor. Under all the evidence and circumstances of this case we are not convinced that contention is sound. (*Dick's Transfer Co. v. Miller*, supra; *Duncan v. Branson*, 153 Kan. 344, 110 P. 2d 789; *Meneley v. Montgomery*, 145 Kan. 109, 64 P. 2d 550, and *Balano v. Nofziger*, 137 Kan. 513, 21 P. 2d 896.)

The judgment appealed from is reversed and the cause is remanded with directions to grant a new trial.