No. 28,270.

CHRIS J. BURNS, *Appellant*, v. R. D. HUNTER, *Appellee.*

(271 Pac. 398.)

Opinion filed November 3, 1928.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellant.

*S. S. Smith,* of Abilene, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover $1,000 which defendant received from plaintiff as an advance payment pursuant to a written contract for the purchase of sixty-five shares of bank stock. The contract was not carried into effect; defendant refused to return the down payment; and in the lawsuit which followed plaintiff was defeated, and appeals, assigning error on the trial court's refusal to give certain instructions and to submit certain special questions to the jury requested by plaintiff. The one special question submitted to the jury and the answer returned read:

"Q. Did the defendant refuse to deliver, transfer and assign sixty-five shares of the capital stock of the Carlton State Bank to the plaintiff upon November 10, 1926? A. No."

Appellant opens his argument thus:

"There is really but one question for determination in this case in this court. Did the trial court err in refusing plaintiff's request for its several special instructions concerning rescission of the contract. by either of the parties and acquiescence by the other; and abandonment of the contract by both parties or by the defendant; and in refusing the plaintiff's request for the submission of special questions to the jury."

It is difficult to discern any issue of rescission and acquiescence in this case. Plaintiff's petition did allege that after making the written contract for the sale of defendant's sixty-five shares of bank stock, there were negotiations between the parties relative to a reduction of the number of shares which defendant was to sell. But the trial court disposed of that matter by an instruction to which no objection was made in the trial court and on which no error is assigned in this appeal. It reads:

"Some evidence has been introduced as to negotiations between the parties for a modification of the written contract so that it would apply to fifty-one shares instead of sixty-five shares of the capital stock of said bank, but you are instructed that there is no evidence that such a modification of said contract was ever consummated, and the evidence in that regard should therefore be wholly disregarded by you."

This instruction became the law of that feature of the case with which it dealt. (*Duigenan v. Claus*, 46 Kan. 275, 26 Pac. 699; *Dryden v. C. K. & N. Rly. Co.*, 47 Kan. 445, 28 Pac. 153; *Railway Co. v. Schroll*, 76 Kan. 572, 92 Pac. 596; 14 R. C. L. 808, 822.)

Following the failure of the negotiations to change the number of shares, plaintiff's version of the facts reads:

"A. I went back there on the tenth. . . .

"Q. Now the tenth was the date mentioned in the contract as to when you should pay the balance on the contract—the balance of the money? A. Yes.

"Q. And get your stock? A. The tenth was the day that our contract was supposed to be closed and complete. . . .

"Q. Well, when you got down there what if anything did you say to him and what did he say to you about closing up this deal? A. I told him that I came down to close the deal with him that day, and he said that he didn't care to discuss it any further, and he didn't believe that he was ready to do anything right now, and he gave me to understand—— . . .

"Q. What did he do? A. Well he turned around, turned his back to me and walked off and went to work at his books. . . .

"Q. You went home? A. Yes, sir.

"Q. Did you ever go back? A. I went back on the 12th. . . .

"Q. And did you find Mr. Hunter at the bank that day? A. Yes. . . . I introduced Mr. Gemmill, and I told him that I came down to close up the deal.

"Q. What, if anything, did Mr. Hunter say? A. He said that he didn't think that we could do anything on the closing of the deal, and I told him then that if we couldn't do anything on the close of the deal and he wanted to pass it up that I wanted my money back, and he turned around and walked over and went to working on his books again. . . .

"Q. When you went down there on the tenth, you may state whether or not you were ready, able and willing to close the deal? A. I was."

The evidence for the defendant completely controverted the foregoing narrative; but assuming its truth, what is there about it which called for the giving of instructions covering the law of rescission and acquiescence, or of mutual abandonment of the contract? We discern nothing. Plaintiff did not aver that he himself rescinded and that defendant acquiesced. He did not testify that defendant rescinded and that he (plaintiff) acquiesced. Nor did he give any testimony which by fair inference could be said to amount to abandonment of the contract by mutual assent. Plaintiff's petition sufficiently alleged, and his evidence sufficiently tended to prove, that defendant refused to carry out the contract, but that matter is completely foreclosed by the jury's special finding to the contrary. And it cannot be gainsaid that the testimony given by defendant fully supported that finding. It is needless to quote from that testimony, but in substance it was that plaintiff told him he had been disappointed in the matter of raising the money to buy the sixty-five shares, and he asked defendant to accept his note for part of the purchase price; that defendant rejected that request, and that he was at all times ready, willing and able to deliver the stock according to the terms of the contract if plaintiff's money had been forthcoming.

A point is urged against defendant because he did not comply with one feature of the contract which stipulated:

"Said first party [defendant] agrees to use his influence and best efforts to elect or have elected said second party on board of directors and officer of said Carlton State Bank; in case of failure to said election all moneys paid on this contract shall be refunded to said party of the second part."

Necessarily an election of plaintiff to a place on the board of directors and as an officer of the bank could not precede his ac-

quisition of the bank stock, or at least of a sufficient number of shares to qualify him. (R. S. 9-109, 17-227.)

It is also argued that the contract did not provide for a forfeiture of the advance payment. True; but the contract did specify the particular condition under which the advance payment would be returned; and as the carrying out of the precedent terms of the contract never progressed far enough for plaintiff's election to the directorate to be properly undertaken, the contract clause for the return of the down payment furnished no basis for a judgment in plaintiff's favor. There is good authority for the rule of law that one who has bound himself in a written contract for the purchase of property and makes a partial payment thereon is not entitled to recover such payment if the sale fails solely because of his own fault. (*Donahue v. Parkman*, 161 Mass. 412, 42 A. S. R. 415; *Neis v. O'Brien*, 12 Wash. 358.) This rule is certainly not inequitable where the contract specifically states the condition under which the partial payment is to be returned. In such case the parties are presumed to have deliberately excluded from the contract all other grounds under which a refund could be demanded.

We have noted the nine special questions prepared by plaintiff, all of which (except the seventh quoted above) the trial court refused to submit to the jury. The first four covered matters not in dispute. The matters covered by questions 5 and 6 were disposed of by the court's instruction quoted above. No. 8 was not important; and No. 9 was properly rejected.

The judgment is affirmed.

BURCH, J., not sitting.