No. 38,331

E. D. KREHBIEL, *Appellee*, v. L. W. MILFORD, *Appellant*.

(232 P. 2d 229)

Opinion filed June 9, 1951.

*E. C. Minner* and *Harry A. Waite*, both of Dodge City, were on the briefs for the appellant.

*Logan N. Green, Roland H. Tate* and *Daniel R. Hopkins*, all of Garden City, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action by a real estate agent to recover compensation from the owner for procuring a purchaser who was ready, willing, and able to purchase land in accord with the terms of an oral listing agreement. The plaintiff recovered and the defendant appeals.

With issues joined by pleadings not in question this cause came on for trial by a jury which, after the trial court had denied defendant's request for an instructed verdict, returned a verdict in favor of plaintiff. Thereafter, the trial court overruled defendant's motion for a new trial based upon grounds, among others, the refusal to submit the instruction for a directed verdict as requested was erroneous and that the verdict was not sustained by sufficient evidence and was contrary to the evidence. It then rendered judgment in accord with the verdict. Thereupon defendant perfected this appeal wherein he seeks a reversal of the judgment under specifications of error charging that the trial court erred in refusing to instruct the jury to return a verdict in his favor and in denying him a new trial.

Factual features of the case not in dispute can be briefly summarized and stated thusly:

Sometime in the fore part of 1949 L. W. Milford who was a resident of Finney county and owned a section of land located in Kearny county listed such property with E. D. Krehbiel, and several other real estate dealers of the community, for sale at a price of $48,000. Krehbiel had a daughter, Mildred Gustad, who was associated with him in his business as a realtor. She contacted Mrs. E. B. Beiderwell of Garden City as a prospective purchaser on the morning of Friday, January 13, 1950. Mrs. Beiderwell indicated she was interested in purchasing the land. Later in the afternoon of the same day Mrs. Gustad called Milford and advised him she had a prospective purchaser and asked if he would be available for an appointment on Monday. Upon receipt of an affirmative answer she said "Well I'll see you Monday," but made no definite appointment at that time. On the afternoon of Sunday, January 15, Mrs. Gustad, who in the meantime had had no further contact with Mrs. Beiderwell, had a second telephone conversation with Milford. At that time she advised him it was going to be necessary for her to be out of town on Monday and suggested an appointment for Tuesday. Mrs. Gustad then left Garden City for Wichita returning to Garden City about 4 o'clock on the afternoon of Monday, January 16. She immediately called Milford and was informed the land had been sold to another buyer earlier in the day. She then called Mrs. Beiderwell who advised her to the same effect.

So much for the undisputed evidence. Mrs. Gustad's testimony to the effect she notified Milford in their second telephone conversation that the people she had contacted were not fooling around but were going to buy is controverted. However, she so testified and the trial court approved the verdict. Therefore, under the established rule (See West's Kansas Digest, Appeal & Error, §§ 1002 and 1005[3]) a verdict on conflicting evidence will not be disturbed on appeal, that fact must be regarded as established for present purposes.

We turn now to evidence touching the status of Mrs. Beiderwell as a prospective purchaser who was ready, willing, and able to buy the land in question at the listed price. As we do so it should be noted that during the trial the parties stipulated she was able to buy. Thus we come to the only serious conflict between the parties regarding the facts disclosed by the evidence. Appellee contends the record discloses evidence establishing that he had procured a purchaser who was ready and willing to buy at the listed price and

that appellant had been notified of that fact. On the other hand appellant insists there is nothing whatsoever in the evidence to sustain that contention. Let us see. A review of the record touching matters pertinent to a decision of the wholly irreconcilable positions of the parties on the point in question reveals that Mrs. Beiderwell did not testify as a witness and that the only evidence with respect thereto is to be found in statements made by Mrs. Gustad and in what the appellee seeks to construe as admissions made by appellant.

In answer to a question respecting the nature of her first conversation with Mrs. Beiderwell, Mrs. Gustad replied:

"A. I called Mrs. Beiderwell and asked her if she was still interested in land. I had talked to her about property at different times. I had an idea that she was interested in some that was close to her property, to her land. She said 'Yes, I am, if it is close to my land.' I said 'Well, this is very close.' She said 'Where is it?' I gave her the legal description and she said 'Well, now, where is it?' I said 'I will come up to the house and bring an ownership map and I can show you better', so I went up to her house. I showed her on the map where it was located. She wanted to know the price and I told her. She said 'I know where that land is; that is a mighty good section, and I sure would like to have it.' She said 'Well, I am familiar with it but I want the doctor just to look it over.' I left my map so they could fly over and look at it. I told her 'Well, to make sure, now, that it hasn't been sold I will call Mr. Milford and find out if it is still seventy-five dollars an acre and if it is still available' and that was about the extent of the conversation with her, other than personal conversation."

It will be recalled this witness testified she had a telephone conversation with Milford following the foregoing conversation with Mrs. Beiderwell. When asked to relate that conversation she said:

"Well, I called Mr. Milford and told him that I have a very good—I asked him first, 'Is your land still available to sell' and he said 'Yes, it is.' I said 'Well, is the same price still on it?' He said 'Yes' because it had been changed one time and I wanted to be sure that I knew exactly what I was doing, and he said 'Yes, it is,' and I said 'I have a party that is going to go to Lakin and fly over it over the week-end. She wanted her husband to see it. He is a doctor and they are very busy and I didn't want them to go over there if the land was not available.' I asked him if he would be available for an appointment on Monday, if he would be in town Monday, and he said 'Yes, as far as he knew he would be.' I said, 'Well, I'll see you Monday.'"

This same witness stated that in the conversation she had with Mrs. Beiderwell, after the land had been sold, Mrs. Beiderwell told her that she had made an appointment with Milford for 1 p. m. on Monday, January 16th and that she had taken her checkbook with

her and was going to close the deal but that after reaching the place fixed by him for the appointment she was informed by his wife the land had been sold and did not see him. Witness also testified that she told Milford in their first conversation that her customer wanted to fly over the land and see it. In addition she stated Mrs. Beiderwell did go and look at the land on Sunday and admitted that she did not see her after she flew over the land until around 4 o'clock on the afternoon of Monday, January 16th.

The evidence respecting so-called admissions on the part of appellant is not lengthy and can be briefly stated. Appellee testified that after he had commenced this action appellant told him that when the parties who finally purchased the land were hesitant about closing the deal he told them if they did not give him what he was asking he had an appointment with another party that would take it. One Atherton, who made the sale, stated that before the deal was finally closed appellant said he had someone else that was looking at the land and if he did not sell it he was going up at 1:30 o'clock and talk to the other—next—prospect.

The record of appellant's testimony discloses nothing susceptible of being construed as an admission that he had ever been told that appellee had a purchaser who was ready and willing to buy. In fact not once but on several occasions during his examination he stated that Mrs. Beiderwell in requesting an appointment told him that she would like to have a talk with him regarding the section of land in Kearny county that Mrs. Gustad had told her about.

With evidence in substance as heretofore related the court submitted the cause with its instructions as to the applicable law. One of these instructions, No. 7, reads as follows:

"If the defendant prior to the plaintiff's notifying him that he had a purchaser ready, able and willing to buy, in good faith sold the land to another customer, the plaintiff cannot recover. *In order for the plaintiff to recover, the burden is upon him to prove that he obtained a customer who was ready, able and willing to meet the terms offered by the defendant prior to the sale of the land to another, and so notified the defendant of that fact.* One giving a real estate broker authority to sell his property upon terms stated, but not expressly agreeing that such real estate agent shall have the exclusive right to sell, retains the right to effect a sale personally or through another agent, *and the owner may enter into an agreement to sell which will be effectual at any time before he has actual notice that a purchaser has been procured by the agent who is ready, able and willing to purchase under the terms of the listing.*" (Emphasis supplied.)

We are inclined to the view the foregoing instruction was proper and correctly states the law of this state. (See *White v. Turner,* 164 Kan. 659, 192 P. 2d 200; *Helling v. Darby,* 71 Kan. 107, 79 Pac. 1073; *Haggart v. King,* 107 Kan. 75, 190 Pac. 763.) However, we need not labor that point. There was no objection to instruction 7 as given in the court below and, under our decisions (*Burns v. Hunter,* 126 Kan. 736, 271 Pac. 398; *Montague v. Burgerhoff,* 152 Kan. 124, 102 P. 2d 1031; *Sowers v. Wells,* 154 Kan. 134, 136, 114 P. 2d 828; *Cruse v. Dole,* 155 Kan. 292, 298, 124 P. 2d 470; *Sams v. Commercial Standard Ins. Co.,* 157 Kan. 278, 139 P. 2d 859), it became the law of the case. Nor is there any occasion, after setting forth all the testimony touching on the point, to enter into an extended discussion as to the import to be given the evidence. It suffices to say that when carefully analyzed the evidence adduced at the trial and presented in the record before us fails to disclose that, prior to its sale, appellee had notified appellant he had procured a purchaser who was ready and willing to buy the land in question under the terms of his listing agreement prior to its sale but also fails to reveal that he had actually procured such a purchaser. Under the instruction to which we have referred, evidence to sustain both points, was a necessary prerequisite to the return of a verdict or the rendition of judgment against appellant in the action.

It follows the trial court should have sustained appellant's motion for a new trial. The judgment is reversed with direction to grant a new trial.

WEDELL, J. (concurring in part and dissenting in part): I concur in the conclusion that plaintiff's evidence failed to establish a cause of action. It, therefore, seems to me plaintiff is not entitled to another trial and that judgment should be rendered for the defendant.