No. 34,720

Jim Lukens, *Appellant*, v. The First National Bank,
of Medicine Lodge, *Appellee*.

(101 P. 2d 914)

Opinion
filed May 4, 1940.

*J. N. Tincher, Clyde Raleigh,* both of Hutchinson, and *Leaford F. Cushenbery,* of Medicine Lodge, for the appellant.

*Samuel Griffin, Riley W. MacGregor* and *Herbert Hobble, Jr.,* all of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action for damages for alleged wrongful attachment and garnishment of wheat or credits belonging to the plaintiff. The defendant prevailed, and the plaintiff appeals, contending that the court erred in the instructions given and in the refusal to give the instructions asked for by the plaintiff.

The appellee, The First National Bank, of Medicine Lodge, held an unsatisfied judgment against G. W. Lukens, father of the appellant, Jim Lukens. On July 5, 1938, the bank caused an execution to be issued against the property of G. W. Lukens and sought to attach wheat stored in the elevators of the Hunter Milling Company, at Pixley, and the Imperial Flour Mills Company, at Medi-

cine Lodge. The milling companies reported that they had no wheat belonging to G. W. Lukens.

On July 14, 1938, the bank filed its affidavit in garnishment, and summons was issued thereunder directed against the two elevators. The elevators answered that they had no property or credits belonging to G. W. Lukens and that all of the Lukens wheat or credits which they had belonged to Jim Lukens.

On July 25, 1938, the bank took issue with the answers of the garnishees, and on the issue thus made, the matter was presented for trial. Various continuances were secured by the bank until December 9, 1938, when the bank dismissed the action in garnishment and appellant's wheat was thereupon released.

The instant action for damages followed.

The material allegations of the plaintiff—in addition to recital of the garnishment proceedings heretofore referred to—may be briefly stated as follows: That for several years he had been engaged in farming near Medicine Lodge; that he had raised and harvested wheat which he had deposited in various elevators in the community; that 2,066 bushels of such wheat were deposited in the elevator of the Hunter Milling Company at Pixley, under the terms and conditions as shown by the written contracts which were made a part of the petition; that he had deposited 718 bushels of such wheat in the elevator of the Imperial Flour Mills at Medicine Lodge; that to the best of his knowledge the wheat had been shipped out of the elevators within ten days after it was there deposited; that he was the sole owner of the wheat and of the credits arising therefrom; that G. W. Lukens had no right, title, or interest in the wheat; that he was not indebted to the defendant; that on July 6, 1938, he notified the defendant by letter that he was the owner of the wheat and demanded that the wheat be released; that at about the same time he advised the president of the defendant bank, in a letter by his attorney, that he was the sole owner of the wheat; that soon thereafter G. W. Lukens also advised the bank that he was not the owner of the wheat and had no interest in it; that despite its knowledge that he owned the wheat, the bank refused to release it and thereafter instituted the garnishment proceedings; that in spite of his efforts to do so, he was unable to secure dismissal of the garnishment proceedings until December 9, 1938, when the bank dismissed the action; that the defendant acted willfully and maliciously in attaching and tying up the wheat and credits

belonging to the plaintiff; that because of the wrongful and malicious acts of the defendant in so doing, he had suffered actual damages as follows: $250 for necessary attorney's fees; $175 for expenses and loss of time in making trips in connection with the attachment and garnishment action; $85 in connection with a transaction for the purchase of land which he was unable to complete on account of the acts of the defendant complained of; $222.72 loss in the market value of the wheat when sold as compared to its value when it was tied up by the garnishment action; $48.15 in interest which he would not have been obligated to pay had he been able to sell the wheat at the time it was attached. In addition, exemplary or punitive damages were prayed for in the sum of $5,000.

In its answer the bank, after admitting its prosecution of the garnishment proceedings, denied that the execution referred to in the petition was ever levied against the property of the plaintiff, or that the garnishment summons was intended to reach and or did reach any property of the plaintiff. It alleged that the plaintiff made his home with his father, G. W. Lukens, and that the wheat referred to in the petition was raised on land either owned or formerly operated by G. W. Lukens; and that "this defendant believed at that time and still believes that the wheat produced, or at least a part thereof, was the property of G. W. Lukens and that the plaintiff herein and G. W. Lukens were operating said farm in such a manner and with the intent to defraud this defendant and the other creditors of G. W. Lukens." It denied that it ever stated that it was attempting to tie up the plaintiff's property or that it would harrass him until he would pay off the debts of G. W. Lukens or that it acted with the intent or purpose of hurting the plaintiff or tying up any of his wheat or the credits thereon. It alleged that the wheat was mortgaged to the Sharon Valley State Bank and that in addition there was an oral mortgage to the People's Oil and Gas Company and that these two mortgages exceeded the value of the wheat; that the plaintiff or the mortgagees could have secured payment at any time they desired to do so; denied that the plaintiff employed attorneys to obtain the release of the wheat and alleged that if said attorneys were employed they never appeared therein; denied the allegations of the petition relative to the purchase of land, the allegations with reference to interest owed to the Sharon Valley State Bank, and alleged that if they were true they would constitute no basis for damages for the reason that same are specu-

lative and remote; denied the allegation with reference to the drop in the market price of the wheat and alleged that such change in the market price did not constitute a proper measure of damages and that the defendant was in no way liable in connection therewith; denied that it had wronged or attempted to wrong the plaintiff and "that its entire efforts in the matter were to collect a judgment that it held against G. W. Lukens, the father of this plaintiff, who farmed and operated with the plaintiff and assisted in producing the wheat, the proceeds of which this defendant sought to apply to the satisfaction of a judgment held by it against G. W. Lukens in the sum of approximately $250;" alleged that if the plaintiff suffered any damages, such damage resulted from his own failure to make proper demand and collect whatever amounts were due him from the elevators.

The reply was a general denial of the averments of his answer.

The action was tried before a jury which returned a general verdict for the defendant.

Plaintiff's motion for a new trial was overruled. Among the alleged errors set out in the motion were erroneous instructions to the jury and failure to give the instructions requested by the plaintiff. The particular instructions complained of here are instructions 2, 4, 5, 6, 7, 8, 9, 10, 12, and 13.

We are met at the outset with the contention of the appellee that the instructions complained of were not objected to at the time and are therefore not reviewable. To this contention appellant makes two replies.

The first is that even though no objection was made at the time, an appeal may be taken from an erroneous instruction if the appellant had previously requested an instruction embodying a contrary view of the law involved and such request had been refused. The second is that failure to object at the time does not preclude appeal from instructions clearly erroneous in law or outside the issues in the case.

The appellant also contends that there was no fair opportunity to prepare and enter objections to the instructions for the reason that the instructions were not handed to counsel until a few minutes before the court began to read them to the jury, and it was not until that time that plaintiff was informed what instructions had been refused or what instructions would be given. It is urged that all appellant could have done at the time would have been to enter a

general objection to the instructions, and that at the hearing upon the motion for a new trial the questions presented relative to the instructions were fully argued to the court and that every authority here cited was at that time called to the attention of the court.

We do not find any decision of this court which squarely holds that no objection is necessary to make instructions reviewable, provided a contrary instruction on the applicable law had previously been requested and refused. The doctrine, however, has been referred to approvingly in *Foley v. Crawford,* 125 Kan. 252, 263, 264 Pac. 59; *Hack v. City of Pittsburg,* 145 Kan. 383, 389, 65 P. 2d 580, and appears sound in principle. It satisfies the essential reason which supports those cases which hold that objection must be made if review of the instructions is to be had. A request for instructions which embody a statement of law contrary to that which is subsequently given calls the court's attention definitely to counsel's view and therefore it cannot be said that the trial court did not have full opportunity to consider the question. This is especially true where the law question involved is specifically presented and argued on the motion for a new trial. The doctrine is clearly enunciated in 1 Randall's Instructions to Juries 938, §§ 511, 512, and supporting cases there cited. In discussing the need for making objection to erroneous instructions, it is stated in Corpus Juris (64 C. J. 943) that one method is "by calling on the court to charge in a certain way." (*Ft. Worth & D. C. Ry. Co. v. Alcorn,* [Tex. Civ. App.], 178 S. W. 833, 836, Headnote ¶ 8.) See, also, as bearing on this question, *Voris v. Shotts et al.,* 20 Ind. App. 220, 223, 50 N. E. 484; *Jones et al. v. Hathaway et al.,* 77 Ind. 14; *Packard v. Bergen Neck Ry. Co.,* 54 N. J. Law, 553; *Potts v. Clarke,* 20 N. J. Law, 536. We conclude that failure to object to an instruction will not of itself preclude review of the instruction if a requested instruction clearly presenting a contrary statement of law had been refused. This conclusion, as hereinafter applied to the instant situation, makes it unnecessary to discuss appellant's second contention that even if contrary instructions had not been requested and refused the instructions complained of would be reviewable even in the absence of objections, for the reason that they were not merely inadequate, incomplete, or similarly objectionable, but were fundamentally erroneous.

We now consider the immediate question of whether the instructions requested and refused embody a statement of applicable law

contrary to those subsequently given; also, in the same connection, whether the instructions that were given went outside the issues as limited by the evidence. It is unnecessary to discuss all the instructions in detail. The issue here may be reduced to two questions, the answers to which will be determinative. The first one is whether the jury was properly instructed on the matter of actual and compensatory damages, and the second is whether there was any conflict of testimony as to the ownership of the wheat which justified the court in submitting a question of ownership to the jury.

In instruction number five the jury was instructed in substance that if it found from a preponderance of the evidence that the plaintiff deposited the wheat, as alleged, with the milling companies, and that the defendant tied it up by a garnishment proceeding in an action against G. W. Lukens (the father of the appellant), under such circumstances that the garnishees refused payment of such wheat to the plaintiff or refused the plaintiff the right to sell or to realize on the wheat at his own election, and that the wheat was the property of the plaintiff, Jim Lukens, and not the property of G. W. Lukens, *and that the defendant bank did what it did do without probable cause and reasonable grounds* for believing that the wheat or some part thereof was the property of G. W. Lukens, that in such event the plaintiff would be entitled to recover. In other words, if the bank which tied up the plaintiff's wheat for five months on the erroneous belief that it was, in part at least, his father's wheat, the plaintiff could not recover any damages provided the jury believed that the bank had probable cause and reasonable grounds for so believing.

This was clearly an erroneous instruction. It would have been proper as applied to exemplary damages, but it was not good as applied to actual and compensatory damages. The garnishees answered that they held no wheat belonging to G. W. Lukens, nor any credits of his, and the attorneys for Jim Lukens immediately thereafter advised the bank to the same effect. The bank chose to take issue. The result was that plaintiff's wheat was tied up for more than five months. If the garnishment was wrongful in character and the wheat and credits actually belonged to Jim Lukens and not G. W. Lukens, it is no defense to the claim for actual damages resulting therefrom that the bank had reasonable grounds to think that the wheat belonged to G. W. Lukens. It could only be a defense to a claim for exemplary or punitive damages. It is true that cases under the common law and under the statutes of some

states may be cited which support the view that probable cause is a defense even as against actual damages. But that is no longer the rule under many modern statutes. (28 C. J. 542; Waples on Attachment and Garnishment, 2d ed., 689; 5 Am. Jur. 191; *Yarborough v. Weaver,* 6 Tex. Civ. App. 215, 25 S. W. 468.) And even where the absence of probable cause is requisite for recovery it has been held that "probable cause" must exist as a fact and not merely in the mind of the attaching creditor. (*Seattle Crockery Co. v. Haley,* 6 Wash. 302, 33 Pac. 650.)

This court has followed the more modern rule which does not recognize probable cause as a sufficient defense to a claim for actual damages for wrongful garnishment. (*Jacobs v. Greening,* 109 Kan. 674, 202 Pac. 72; *Dody v. Bank,* 82 Kan. 406, 108 Pac. 804.) It may also be noted that liability on the garnishment bond given under our statute (G. S. 1935, 60-942) is based simply on "wrongful" garnishment, and not on garnishment that is malicious or without probable cause.

The conclusion heretofore stated is not vitiated by the fact that the petition alleged that the actions of the defendant were willful and malicious in character. Failure to substantiate allegations that the actions were willful and malicious will, of course, defeat a claim for punitive damages, but will not defeat a claim for actual damages where it is shown that the garnishment was wrongful. (*Jacobs v. Greening,* supra; *Carothers v. McIlhenny Co.,* 63 Tex. 138, 140.)

We think that the requested instructions embodied, with reasonable definiteness, the distinction we have been discussing. Requested instruction number one contained portions which perhaps did not need to be included, but the last paragraph did squarely present the proposition that if the defendant did deprive the plaintiff of his right to sell and dispose of the wheat in the manner set out, then the plaintiff would be entitled to recover. This requested instruction was followed by other instructions relative to punitive or exemplary damages, thus clearly indicating a distinction between the right to recover for actual and the right to recover for punitive or exemplary damages. The first requested instruction properly omitted reference to probable cause or to willful or malicious action, while such factors were properly included in the other requested instructions.

We also conclude after a careful and painstaking examination of the record before us, that the court erred in submitting to the jury any question as to the ownership of the wheat. There was not a

word of testimony offered which indicated that G. W. Lukens, the father of the appellant, had any ownership or interest whatever in the wheat, or that the wheat belonged to anybody but Jim Lukens. The bank offered no testimony of any sort in support of its affidavit in which it took issue with the garnishees on the question of ownership, or in support of the statements in its answer in this action that it "believed at that time and still believes that the wheat produced or at least a part thereof was the property of G. W. Lukens and that the plaintiff herein and G. W. Lukens were operating said farm in such a manner and with the intent to defraud this defendant and the other creditors of G. W. Lukens." Not only that, but the president of the bank testified that the bank treated the wheat as George Lukens' wheat after the elevator man had said that it was not George Lukens' wheat and after he had received the letter written by Jim Lukens' attorneys. This was in line with his statement to George Lukens that he "would stay after him until he or *somebody else paid it.*" In the face of uncontroverted testimony that Jim Lukens was the sole owner of the wheat, the court in various instructions submitted to the jury the question of whether G. W. Lukens or Jim Lukens owned the wheat and whether the bank had probable cause or reason to believe that he so owned it. More than that, such instructions were given despite the request of the plaintiff for an instruction that there had been no evidence introduced in support of the defendant's denial that the plaintiff was the owner of the wheat.

It further appears from the record that not only on the question of the ownership of the wheat but also on other matters the court simply copied the substance of the pleadings instead of outlining the issues—within the ·pleadings—as limited by the evidence. It called the attention of the jury to various allegations of the answer with reference to which no evidence whatever had been presented. This was true, for instance, with reference to the defendant's unsupported allegations that the appellant and his father were seeking to defraud the appellee and other creditors; that the People's Oil and Gas Company held an oral mortgage on the wheat; and that the plaintiff had made no demand upon the elevators. It can only tend to confuse the jury to include in the instructions allegations taken from the pleadings as to which no supporting evidence has been offered. (*Stevens v. Maxwell*, 65 Kan. 835, 70 Pac. 872; *Moore v. Owens*, 143 Kan. 620, 56 P. 2d 86.)

The bank chose to take issue with the garnishees on the question of ownership of the wheat. The record is clear that it was determined to hold the wheat in question for payment of the father's debt. It kept the proceeds tied up for over five months. On the trial it offered no evidence whatever in support either of its allegation or its expressed belief that the wheat belonged to the father. The evidence that it was the son's wheat was in no way controverted. On this fact and on all the facts disclosed by the record, only one conclusion can be reached and that is that the plaintiff was wrongfully deprived of the proceeds from the sale of his wheat as a result of the garnishment proceedings, and that the only question that should have been submitted to the jury was the amount of damages to be awarded.

The judgment will be reversed and the case remanded with instructions to grant a new trial on the sole issue of the amount of damages to which the plaintiff is entitled, the question to be submitted under proper instructions as to the necessary elements to be considered in support of claims for actual or for punitive damages. It is so ordered.