413 P.2d 590

**UNITED STATES FIDELITY & GUARAN-TY CO., a Maryland corporation, Joseph H. Brown and Bruce Brown, individually and as co-partners doing business under the firm name and style of Joseph H. Brown & Son, Appellants,**

v.

**Claude DAVIS, Appellee.***

**No. 2 CA–CIV 77.**

Court of Appeals of Arizona.

April 26, 1966.

Rehearing Denied May 27, 1966.
Review Denied July 5, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8113. The matter was referred to this Court pursuant to A.R.S. Section 12–120.23.

Moore, Vlahovich, Greenwood & Smitherman, by James B. Greenwood, Bisbee, for appellants.

Nasib Karam, Nogales, for appellee.

KRUCKER, Chief Judge.

This is an appeal from a judgment entered in the Superior Court of Santa Cruz County in favor of plaintiff, appellee herein, and against defendants, appellants, in the sum of $11,768.88. The judgment was awarded as damages resulting from the wrongful attachment of cattle belonging to appellee and from the wrongful writ of garnishment against other assets of the appellee. Pertinent facts leading to this appeal follow.

In 1959 and early 1960, appellant Brown and appellee were joint venturers in bringing cattle out of Mexico. In early 1960, difficulties arose which were not resolved and, on March 30, 1960, appellant Brown initiated action against appellee and secured a writ of attachment against the property of the appellee. The Pima County Sheriff made a range levy on 150 head of appellee's cattle. These cattle were part of 350 head of Mexican crossbred cattle purchased by appellee subject to two chattel mortgages held by the Arizona Livestock Production Credit Association to secure the sum of $28,900.00. The cattle were pastured on a ranch near Ajo, Arizona, until April 4, 1960, when the 150 head were levied upon.

As a result of appellant Brown's attachment, the Association felt unsafe and insecure in the payment of sums secured by its mortgages. Since the levy prevented normal marketing of the cattle, appellant Brown and the Association entered into a stipulation for sale of the cattle providing that the cattle should all be gathered and sold, that the Association would hold any excess funds above what was due it on its mortgages for the benefit of appellant Brown, and that if it were later determined that appellant Brown had a superior lien upon the cattle to that of the Association, the Association would account for all money received by it. A copy of the stipulation was delivered to the Sheriff and the cattle were released from the levy. Thereafter the cattle were sold. All sums received from the sale of the cattle were credited to appellee's loan account with the Association and such was paid in full. A balance of $1,543.32, after satisfaction of appellee's loan account in addition to 286 shares of Class B stock of the Association of the par value of $1,430.00 owned by appellee, were held by the Association pursuant to the stipulation.

In addition, on or about May 25, 1960, appellant Brown had issued a writ of garnishment as to the $1,543.32 and shares held by the Association and belonging to the appellee. The matter was tried to the court, which entered judgment denying relief to appellant Brown and quashing the writ of garnishment. No appeal having been taken from that suit, appellee initiated action for damages resulting from the wrongful attachment and sale of his cattle and from the wrongful issuance of the writ of garnishment. This matter of appellee's damages was tried to the court without a jury and judgment entered in appellee's favor. From

this judgment appellants appeal, alleging eight assignments of error.

Two main issues are presented in this appeal: one concerns the admission in evidence of testimony regarding a verbal agreement between appellee and one Jack Terry for the sale and future delivery of appellee's cattle; the other issue concerns the damages awarded.

Regarding the first issue, appellants claim appellee's testimony, as well as that of Terry, is inadmissible hearsay being extrajudicial statements introduced to prove the truth of the words spoken. The record discloses that on direct examination of appellee certain questions were asked concerning alleged conversations had with Terry regarding a contract to purchase appellee's cattle. Terry was asked similar questions regarding the contract during his direct examination. Appellee claims that a contract of sale for future delivery of the cattle was consummated during these discussions although none of the terms thereof were reduced to writing. The real issue concerning this testimony was admission of the terms of the alleged agreement, i. e., the price of 23¢ per pound to be paid for the cattle. Appellants objected that any testimony regarding these conversations was hearsay. The record discloses that the trial judge reserved a ruling on appellants' objection and allowed the admission of this testimony in evidence.

■■ Hearsay evidence is a statement, oral or written, made at a time when there was no opportunity to cross-examine the declarant and offered to prove the truth of the words spoken or written. Brown, C. H., "The Hearsay Rule in Arizona", 1 Ariz.L. Rev. 1 (1959); V Wigmore, Evidence §§ 1361, 1362 (3d ed. 1940). "The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*" VI Wigmore, Evidence § 1766 (3d ed. 1940), page 178.

■ After a thorough review of the authorities, and upon full consideration of the purpose and definition of the hearsay rule, we cannot conclude that the facts of this case brings it within exclusions encompassed by the rule. Appellee's testimony, as well as that of Mr. Terry, regarding the proposed contract for sale of the cattle, was not offered to prove the truth of the terms of the conversation and are not, therefore, encompassed by prohibitions of the hearsay rule. The fact of the conversation is significant only as it relates to proof of appellee's allegations that he suffered damage and that part of such damage resulted from lost profits because of his inability to perform his obligations under the alleged contract of sale. The proffered testimony was offered to prove the fact that the terms of a contract for the sale and delivery of the subject cattle was discussed. This does not constitute hearsay and the testimony was admissible. Therefore, the court did not err in admitting the testimony as to the sale price of the cattle over the appellants' objection.

■■ Appellants further appeal on several grounds regarding the issue of establishing prospective profits as an element of damages and as to the opinion evidence offered and received from the appellee regarding the weight gain of the cattle. In addition, appellants urge upon us the contention that the proper basis for computing damages is the market value of the cattle at the time they were sold and thus their sale price constitutes their market value and appellee's damages. However,

> "The test of market value is, at best, but a convenient means of getting at the loss suffered and may be discarded, and other more accurate means resorted to if, for special reasons, it is not exact, or otherwise not applicable. Thus, if the market value would not be a fair compensation to the plaintiff for his loss, he is sometimes permitted to recover the value to him based on his actual money loss." 22 Am. Jur.2d, Damages § 146 (1965), page 212.

In addition, the language in American Surety Co. of New York v. Hatch, 24 Ariz. 66, 71, 206 P. 1075, 1076 (1922), is apropos:

> "Compensation for the loss occasioned by the levy of the writ of attachment and the

*withholding of the property* by virtue of that levy is the basis of the right of recovery, and in many cases the value of the property; that is, the market value, at the time of the levy would be absolutely inadequate to compensate the injured party for the loss sustained."

Appellants quote from 7 C.J.S. Attachment § 179(c) (6) (1937), page 370, in stating that it is the general rule that loss of future profits is not an element of damage for wrongful attachment unless the attachment was malicious and without probable cause. However, appellants fail to quote the sentence following this general rule which recognizes a split of authority on this issue and concludes, Id.:

"At all events recovery cannot be permitted for the loss of profits on a sale of property subject to attachment where the profits are contingent, doubtful, or highly speculative."

▆▆▆ It cannot be disputed that "No recovery can be had for loss of profits which are determined to be uncertain, contingent, conjectural, or speculative." 22 Am.Jur.2d, Damages § 172 (1965), page 243. However, the evidence presented in this case is not of such character. Appellee and Mr. Terry testified regarding their contract of sale, the value of the cattle and the approximate weight the cattle would gain to the date of performance of the contract, and such was properly admitted.[1] In addition, testimony of a State Cattle Inspector called by appellants established that the cattle would have gained approximately 150 pounds from the date of the levy to the date of performance of appellee's contract of sale. This evidence was produced by the appellants and establishes a basis for an award of damages since the cattle would have gained at least 150 pounds per head. Thus, the issue of damages went to the weight to be given to such evidence in con-

junction with the testimony of appellee and his witness.

Appellants further assail the judgment of the lower court as to the amount of damages awarded, contending that it is excessive and not supported by the weight of evidence. Appellants have provided us with a computation of damages which they believe to be the basis for the court's award but it is admitted that they are unable to account for the deviation in their figures with those of the lower court. It is urged that appellants have been erroneously charged with losses resulting from sale of the entire 350 head of cattle, whereas the attachment issued only on 150 head. Admittedly, we are equally unable to determine the trial court's basis for the amount of damages awarded, such computation not being indicated.

A.R.S. § 12–1524 provides:

"Before issuance of a writ of attachment, plaintiff shall execute and file a bond payable to defendant in an amount not less than the amount for which action is brought, to be approved by the officer issuing the writ, conditioned that plaintiff will prosecute his action to effect and will pay *all damages and costs as may be sustained by defendant by reason of the wrongful obtaining of the attachment.*" (Emphasis supplied.)

In 7 C.J.S. Attachment §§ 556, 559, at pages 680 and 681 (1937), it is stated:

"Where the suing out of the writ was wrongful, the attachment defendant is entitled to recover his actual damages, that is, compensation for injuries and losses which are the direct and proximate result of the wrongful suing out of the writ and the seizure and detention of his property thereunder. * * *

* * * * * *

"In accordance with the rule stated in § 556 above, that the recovery of actual

---

1. See 20 Am.Jur., Evidence § 894 (1939); 37 A.L.R.2d 967 (1954); and III Wigmore, Evidence § 716 (3d ed. 1940), page 48, wherein it is stated:

"The *owner of an article*, whether he is generally familiar with such values or

not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and Courts have usually made no objections to this policy."

damages is limited to compensation for injuries which are the direct and proximate result of the wrongful attachment, the items of damage recoverable are limited to those which flow naturally and reasonably therefrom."

■ Actual damages are defined in 25 C.J.S. Damages § 2 page 615 (1966), as those damages "in satisfaction of, or in recompense for, loss or injury sustained; such compensation or damages for an injury as follow from the nature and character of the act, and will put the injured party in the position in which he was before he was injured; * * *."

The record discloses that when the cattle in question were gathered by the Association and sold in May 1960, they brought an average sales price of approximately 18.9¢ per pound. The court allowed total damages in the sum of $11,768.88. Appellee testified that the only expenses connected with the keeping and fattening of these cattle which would have been incurred between the time of the levy and the proposed sale to Terry were monthly expenses for pasturage of $602.00. There was further testimony that no great amount of effort would have been required in the care of the cattle during this period. Thus, if appellee was entitled to recover loss of profits for the entire herd (in excess of 300 cattle) the award of damages is well within the limits established by the evidence.

We believe that under the peculiar facts of this case the court could have taken into account the loss of profits not only for the 150 head of cattle levied upon by the writ of attachment, but also the remaining herd of the appellee. Ordinarily, this might not be true. In this case, however, after the levy of the writ of attachment on the 150 head, the appellant Brown entered into an agreement with the mortgagee Association that *all* of the cattle covered by the Association's mortgages would be sold and all monies received from the sale thereof, over and above amounts owed on the mortgages, would be held to satisfy appellant Brown's claims in the attachment-garnishment action. After such agreement, which was affirmatively acted upon by the Association, the appellant Brown wrongfully garnisheed in the other action, serving the writ upon the Association, thereby tying up all of appellee's funds.

■ The appellant United States Fidelity & Guaranty Company was the bonding company upon both the attachment and garnishment bonds. It raises on this appeal no defenses distinct and separate from the appellant Brown. Under these circumstances, we believe that the trial court was justified in concluding that the loss of profits from all of the cattle were sustained "by reason of the wrongful obtaining of the attachment," (A.R.S. § 12–1524), and/or "* * * by reason of the wrongful suing out of the writ of garnishment" (A.R.S. § 12–1572).

■ On appeal from a judgment of a court sitting without a jury and not required to make findings of fact and conclusions of law, all reasonable inferences must be taken in favor of appellee and if there is any evidence to support the judgment, it must be affirmed. Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965); Goode v. Powers, 97 Ariz. 75, 397 P.2d 56 (1964); Gabitzsch v. Cole, 95 Ariz. 15, 386 P.2d.23 (1963); State Tax Commission v. Graybar Electric Co., 86 Ariz. 253, 344 P.2d 1008 (1959); Sampson v. Transport Indemnity Co., 1 Ariz.App. 529, 405 P.2d 467 (1965). We hold that there was sufficient evidence before the court to support its judgment and that judgment and award of damages is accordingly affirmed.

MOLLOY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.