469 P.2d 75

**AMERICAN CREDIT BUREAU, INC.,**
**Appellant and Cross-Appellee,**

v.

**BEL–AIRE INTERIORS, INC., Appellee**
**and Cross-Appellant.**

**No. 9967–PR.**

Supreme Court of Arizona,
In Banc.

May 14, 1970.

Kaplan, Wilks & Abrams, by Philip M. Haggerty, Phoenix, for appellant and cross-appellee.

Evans & Kunz, by Daniel E. Nastro, Phoenix, for appellee and cross-appellant.

HAYS, Justice.

This matter is before us on a petition for review of a decision of the Court of Appeals, American Credit Bureau, Inc. v. Bel-Aire Interiors, Inc., 11 Ariz.App. 168, 462 P.2d 861 (1969). The Court of Appeals' opinion is hereby vacated.

Plaintiff, the American Credit Bureau, was the assignee of a contract claim of Coulter Cadillac, the assignor. The claim was for $525.07 representing the balance owing to Coulter Cadillac, as vendor, on the purchase of a new 1965 Cadillac by the defendant Bel-Aire Interiors, Inc. In August of 1965, shortly after the claim had been assigned to plaintiff and some eight months after defendant had purchased the car, plaintiff brought suit against defendant for the full amount of the claim. At the same time, plaintiff attached defendant's Cadillac, pursuant to A.R.S. § 12–1521, subsec. 1.

Defendant secured a re-delivery bond in the sum of $1092.34, and regained possession of the automobile. In addition, defendant filed an answer, which contended that because of a valid set-off there was no amount owing on open account. Defendant also counterclaimed for wrongful attachment. It was defendant's contention that plaintiff's attachment was wrongful because the automobile was defective and Coulter Cadillac failed to make the proper repairs and adjustments; that the attachment was malicious and for the sole purpose of hindering, inconveniencing and harassing the defendant, as indicated by the fact that the value of the automobile attached was in excess of ten times the value of plaintiff's claim.

Apparently the necessary repairs were properly made sometime during the spring of 1966, prior to trial on the matter but subsequent to the filing of plaintiff's orig-

inal action and attachment of defendant's car. Plaintiff's motion to dismiss defendant's counterclaim was denied. The trial court, sitting without a jury, heard evidence, and then entered a judgment for plaintiff on the amount claimed, $527.07. The court also found, however, that the attachment was wrongful at the time it issued, and awarded judgment for defendant on its counterclaim in the sum of $1081, which included $131 actual damages, $450 attorneys' fees, and $500 punitive damages. The judgment did not set forth which specific ground(s) supported its finding of wrongful attachment. On appeal, plaintiff claims that neither the law of wrongful attachment nor the evidence supports the trial court's conclusion that plaintiff's attachment was wrongful.

The contract of sale provided that defendant Bel-Aire Interiors would purchase the 1965 Cadillac for $7110.67, trade in an older model worth $3870.00, and pay the balance in cash. Five days after the sale was consummated, defendant's president, Mr. Sibbio, delivered a check to Coulter Cadillac in the sum of $2715.60, leaving an unpaid balance on the purchase price of $525.07, the amount which is the subject of this lawsuit. Almost immediately Sibbio started complaining about problems he was having with the car. These included defects such as faulty refrigeration and heating, loose fitting windows, and inoperable automatic door-locks. Coulter Cadillac performed certain repairs, charging the expense as warranty work, but the problems continued, even after Sibbio's repeated visits to Coulter's repair shop. Sibbio even complained via letter to the manufacturer in Detroit, who in turn contacted Coulter. Several times during the months following the purchase, Coulter Cadillac, and later the plaintiff assignee, requested payment of the unpaid balance. Each time defendant refused, indicating that the debt would not be paid until the necessary repairs were completed.

Defendant's counterclaim alleged several different types of wrongful attachment, all of which constitute a proper cause of action in Arizona. These theories of wrongful attachment might be described as follows:

(1) Maliciously swearing out a writ of attachment in a properly instituted action. See White Lighting Co. v. Wolfson, 68 Cal.2d 336, 66 Cal.Rptr. 697, 438 P.2d 345 (1968);

(2) Maliciously attaching property which possesses a value greatly in excess of the legitimate claim. See Palmer v. Breed, 5 Ariz. 16, 43 P. 219 (1896);

(3) Attaching property in a properly instituted action where no debt in fact exists. Lukens v. First Nat. Bnk., 151 Kan. 937, 101 P.2d 914 (1940).

The first two of these are in the nature of abuse of process, requiring a showing of malice, and are unrelated to the validity of the underlying claim. The third is not available if the underlying claim is due, although a showing of malice and want of probable cause is not necessary to support such a cause of action. The question we must decide is whether there was sufficient evidence to support a finding of wrongful attachment under any of the above theories.

Neither party requested findings of fact and conclusions of law, Ariz.R.Civ.Proc. 52(a), 16 A.R.S., and the trial court made no findings of fact. Rather, the court concluded that the attachment was wrongful at the time it issued and that defendant was entitled to both compensatory and punitive damages on its counterclaim. The fact that punitive damages were awarded impliedly indicates a trial court finding that the conduct of plaintiff in attaching the automobile was malicious. We hold that such a finding was supported by the evidence, and that therefore the judgment on defendant's counterclaim can be grounded on theories one and two above.

At the trial, Mr. Sibbio, the president of defendant Bel-Aire Interiors, testified as follows concerning a telephone conversation with the manager of the plaintiff credit bureau:

"I told him that I felt I wasn't aware of the fact that I owed them any money,

**592**

as far as American Credit Bureau, that Coulter Cadillac and I were trying to work this thing out, and that I had related all of the facts that I have stated earlier about calling Detroit and receiving a letter in answer to my call, stating that they were going to correct the car. I said I felt that as soon as these corrections were made, that I had no reason not to pay the bill, and each time he would call, I would repeat myself.

Finally, he said—about the second or third call, he said he was going to make an example out of me. He got quite— well, I wouldn't know exactly how to say, but he got quite nasty. That's the only way I could say it."

The credit manager denied that any malicious language or threats were uttered at Mr. Sibbio during the telephone conversation. Evidence was also introduced which indicated that the attached automobile was worth in excess of ten times the value of the debt claimed by plaintiff. Defendant contends that these facts taken together indicate malice as a matter of law.

The plaintiff contends that there is no evidence whatsoever in the record to support a finding of malice by the trial court. With this we cannot agree. Reasonable men might differ on the conclusions to be drawn from the evidence in this case, but we will not disturb on appeal the findings of the trial judge when there is evidence to support those findings. Lenslite Co. v. Zocher, 95 Ariz. 208, 388 P.2d 421 (1964), Gillespie Land and Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945). The trial court saw the witnesses, heard their testimony, and was in a position to evaluate their credibility. It is not our function to weigh the evidence and determine the credibility of the witnesses. Burns v. Wheeler, 103 Ariz. 525, 446 P.2d 925 (1968).

The judgment of the trial court is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.