557 P.2d 543

Jack R. SCHULDES and Marilyn Schuldes, his wife and each of them, Appellants and Cross-Appellees,

v.

NATIONAL SURETY CORPORATION, Appellee,

and

American Credit Bureau, Inc., Appellee and Cross-Appellant.

No. I CA–CIV 2560.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 19, 1976.

Rawlins, Ellis, Burrus & Kiewit by Chester J. Peterson, Phoenix, for appellants and cross-appellees.

Kunz & Stinson, Ltd. by Donald R. Kunz, Phoenix, for appellee National Surety Corp.

Lewis & Roca by Walter Cheifetz, Paul G. Ulrich, Peter D. Baird, Phoenix, for appellee and cross-appellant.

## OPINION

EUBANK, Judge.

In addition to other questions, this appeal presents the question of the particular statute of limitations applicable to an action for wrongful attachment and of the damages recoverable in such an action.

The underlying transaction consisted of the execution in May 1967 of a preliminary sales agreement between the appellants, Schuldeses, and a Mr. and Mrs. Thomason, by which the appellants purchased a res-

taurant to be known as The Steak House (Red Dog) in Scottsdale, and agreed to assume the payment of a promissory note payable to the Arizona Bank. Appellants defaulted on the note, and the Thomasons were called upon to pay it, which they did. The Thomasons then assigned their claim against the appellants to the appellee American Credit Bureau for collection.

On April 15, 1968, American Credit Bureau filed suit against appellants on the note and attached the Red Dog. Appellants moved for summary judgment, and on October 8, 1971, summary judgment was entered for appellants on their motion. No appeal was taken from this judgment.

On March 1, 1972, American Credit Bureau filed a new complaint against appellants based on the same transaction, but sounding in contract. Appellants answered on June 20, 1972, denying liability and counterclaimed against American Credit Bureau and National Surety Corporation for damages for wrongful attachment—alleged to have arisen out of the April 15, 1968 attachment.

Appellants moved for summary judgment against American Credit Bureau's complaint, claiming the matter was barred by res judicata. This motion was granted by minute entry order on February 9, 1973.

Appellees also moved for summary judgment against the appellants on the counterclaim, on the theories that (a) there were no damages; (b) there was no loss to appellants; (c) the damages sought were too speculative; and (d) statute of limitations. Summary judgment was entered in favor of the appellees on the counterclaim on August 9, 1973. This judgment adjudicated against appellants all damages sought in their counterclaim "except for those pertaining to attorneys' fees, travel expenses, and costs of this case."

Appellants filed their notice of appeal and bond on October 1, 1973. Meanwhile, on October 15, 1973, appellees obtained a Rule 54(b), Rules of Civil Procedure, 16

A.R.S., determination, which amended the February 9, 1973, order, and then filed their notice of cross-appeal and bond.

## THE STATUTE OF LIMITATIONS

The first questions which we must consider are (a) which statute of limitation applies to an action for wrongful attachment, and (b) when does the cause of action accrue in order to start the statute running?

All parties to this appeal recognize that neither A.R.S. § 12–541 (one-year limitation), A.R.S. § 12–542 (two-year limitation), nor A.R.S. § 12–550 (four-year limitation) specifically refer to a wrongful attachment claim. All parties agree, however, that the longest limitations applicable are four years. We are not directed to any precedent established by our Supreme Court settling the specific question. It is, however, clearly established that we adopted our statutes of limitation from Texas, *Western Coal & Mining Co. v. Hilvert*, 63 Ariz. 171, 160 P.2d 331 (1945), and that when a statute is adopted from another state, such as Texas, it is presumed that it is taken with the construction placed on it by courts of Texas prior to its adoption. *England v. Ally Ong Hing*, 105 Ariz. 65, 459 P.2d 498 (1969); *State ex rel. Swift v. Tullar*, 11 Ariz.App. 112, 462 P.2d 409 (1969).

The Texas statutes of limitation were adopted for the first time in 1887. Prior to 1887, the Texas Supreme Court had construed its statutes of limitation to provide a two-year limitation—that governing actions of trespass for injury done to the estate or the property of another—for actions for wrongful attachment. *Bear Bros. & Hirsch v. Marx & Kempner*, 63 Tex. 298 (1885); *Woods v. Huffman*, 64 Tex. 98 (1885). Therefore, applying the principles of statutory construction enunciated above, we hold that actions for wrongful attachment in Arizona are gov-

erned by the two-year statute of limitation of A.R.S. § 12–542.[1]

■ Appellees rely on the decision in *Jordan v. Meyer*, 90 Tex. 544, 39 S.W. 1081 (1897), to create a four-year limitation for these actions. We are not convinced that this case alters the previously established rule in Texas. The opinion in *Jordan* was a response to a question certified from the court of civil appeals regarding the time when the cause of action accrued, not the limitation period. It appears to us that the parties and the court mistakenly assumed that a four-year limitation applied, since none of the early cases, formulating the two-year rule, were cited, either as being followed or overruled. The commentary in 6 *Tex.Jur.2d* "attachment" § 140 suggests that the *Jordan* decision creates a four-year limitation for actions against sureties on attachment bonds. However, we do not think this is correct for two reasons. First, the opinion in *Jordan* differentiates between the principal and the surety only because the two were sued at different times, and the suit against the surety was held to have been barred by the statute of limitations. Second, we can discern no reason why principals and sureties in a wrongful attachment action should receive different limitations treatment on the same bond.

Turning to the accrual question, the appellees argue that the statute of limitations began to run on April 25, 1968, when the writ of attachment was levied. Since appellants' counterclaim was not filed until June 20, 1972, National Surety contends that appellants' action is barred. For this propo-

sition, appellee points to *Jordan v. Meyer, supra,* which holds that in an action for wrongful attachment, the cause of action arises at the instant of seizure. Appellants naturally argue that the cause of action arose only after the attachment suit was terminated.

■ There are three types of wrongful attachment actions recognized by our Supreme Court in *American Credit Bureau, Inc. v. Bel-Aire Interiors, Inc.,* 105 Ariz. 590 at 591, 469 P.2d 75 at 76 (1970):

(1) Maliciously swearing out a writ of attachment in a properly instituted action;

(1) Maliciously attaching property which possesses a value greatly in excess of the legitimate claim;

(3) Attaching property in a properly instituted action where no debt in fact exists.

Therefore, the first question which we must consider with regard to the accrual of the cause of action, is whether the cause of action for wrongful attachment accrues at different times for claims brought under these different theories. We hold that the cause of action accrues at the same time for each type of wrongful attachment.

The courts in Texas have held that the cause of action for wrongful attachment against the principal and surety on the bond arises at the very instant the attachment is levied. *Torrey, Davison & Grosscup v. Schneider & Davis,* 74 Tex. 116, 11 S.W. 1068 (1889); *Jordan v. Meyer, supra.* Since this construction was placed on the statute after it appeared in our 1887 Code,

---

1. § 12–542.

There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

1. For injuries done to the person of another.

2. For injuries done to the person of another when death ensues from such injuries, which action shall be considered as accruing at the death of the party injured.

3. For trespass for injury done to the estate or the property of another.

4. For taking or carrying away the goods and chattels of another.

5. For detaining the personal property of another and for converting such property to one's own use.

6. For forcible entry or forcible detainer, which action shall be considered as accruing at the commencement of the forcible entry or detainer.

(This statute was amended in 1971 without change, except to designate it as A.R.S. § 12–542.A.)

we cannot say that the Territorial Legislature intended this interpretation to be the law in Arizona. *Cf. State ex rel. Swift v. Tullar, supra.* However, this construction is persuasive in view of the absence of Arizona cases on point, *Western Coal & Mining Co. v. Hilvert, supra,* and A.R.S. § 12–542, *supra.*

■ ■ Additionally, A.R.S. § 12–542, *supra,* footnote 1, specifically states that the period of limitation runs from the time when the cause of action *accrues,* and our cases which have construed the meaning of "accrual" of a cause of action, indicate that a cause of action accrues whenever one person may sue another. *Norton v. Steinfeld,* 36 Ariz. 536, 288 P. 3 (1930); *Rogers v. Smith Cline & French Laboratories,* 5 Ariz.App. 553, 429 P.2d 4 (1967). The essence of a wrongful attachment action is the improper levy. As the Texas Supreme Court said in *Torrey, Davison & Grosscup v. Schneider & Davis,* 74 Tex. at 120–121, 11 S.W. at 1069:

> If the attachment sued out and caused to be levied by appellees was wrongfully sued out a cause of action in behalf of appellants arose at the very instant the seizure was made. *The wrong was then complete though the measure of damages might be augmented by the lapse of time.* [Emphasis added].

Therefore, it is our opinion that the attachment defendant can sue the attachment plaintiff after the levy has been made since the cause of action, if any, accrues at that time. This is exactly what happened in *American Credit Bureau v. Bel-Aire Interiors, Inc., supra,* where wrongful attachment was successfully raised by counterclaim.

Moreover, the Texas court has characterized the action as in the nature of a trespass to property or an injury done to an estate, which is, of course, the language of our A.R.S. § 12–542. A cause of action for trespass arises at the time the alleged trespass occurs. *Cf. Garcia v. Sumrall,* 58 Ariz. 526, 121 P.2d 640 (1942).

■ Finally, we believe that sound policy results from our holding, since we are emphasizing the diligent filing of claims for wrongful attachment. If the original levy is wrongful, the passage of time will not make the attachment any more or any less wrongful; only the amount of damages will be affected, *Torrey, Davison & Grosscup v. Schneider & Davis, supra,* and rapid filing of such cases will serve to mitigate damages. This is pointed up by A.R.S. §§ 12–1536, 12–1537, which permit the removal of the attachment by the posting of a replevin bond in double the amount of the claimed debt.

Language of the California Supreme Court in *McCusker v. Walker,* 77 Cal. 208, at 212–213, 19 P. 382 at 384 (1888) summarizes our view of the problem:

> Nor was the plaintiff's right of action postponed till the attachment was dissolved. The issuance of the writ was not a judicial proceeding, but a ministerial act on the part of the clerk, which he was bound to perform on the filing of the statutory affidavit and undertaking [statutory citations omitted]. Plaintiff might have commenced her action immediately after the writ was levied, and a motion to dissolve it was not necessary. The damages caused by the wrongful act had not all been sustained at that time, but the resulting damages might have been recovered.

Since the wrongful attachment action was filed more than two years after the attachment of the property by appellee American Credit Bureau, summary judgment properly was granted.

## DAMAGES

The appellants appeal from the August 9, 1973 summary judgment adjudicating the damage issue against them. Appellants, by counterclaim, were suing for damages of $741,348 allegedly resulting from the wrongful attachment. The damages were calculated in this manner: the Schuldeses had intended to sell the Red Dog and raise

enough cash to be able to buy land in Wisconsin and build a restaurant thereon. Because of the attachment levy, they could not sell the Red Dog, so they ended up leasing the restaurant in Wisconsin which they claim they otherwise would have owned.

The Schuldeses computed their annual lease expense as $29,590, and multiplied this by the 25 years (the 15-year original term, and two five-year options) of the lease, for a total of $739,750. From this figure they deducted $84,985, which represents the amount of interest the landlord would have to pay on a $110,000 loan at 8%, amortized over fifteen years. To this figure, they added $86,583 for "loss in equity growth." The Schuldeses derived this figure by subtracting the cost to build, $160,000, from the value of the building determined by amortizing the annual rent of $29,590 at a 12% return, or $246,583.

■ We begin by noting that no special rules about damages apply in actions for wrongful attachment. As in any tort claim, to be recoverable, the damages must be the direct and proximate result of the wrong alleged. *Valley National Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974).

■ A wide variety of damages has been allowed in suits alleging wrongful attachment. Loss of rental value has been recognized, *American Surety Co. of New York v. Hatch,* 24 Ariz. 66, 206 P. 1075 (1922), as well as lost profits. *United States Fidelity & Guaranty Co. v. Davis,* 3 Ariz.App. 259, 413 P.2d 590 (1966). However, no damages can be allowed for the loss of profits which is determined to be uncertain, contingent, conjectural, or speculative. *United States Fidelity & Guaranty Co. v. Davis, supra.* "Uncertainty" in this context means that the existence of the profits cannot be nebulous, although there can be some uncertainty in fixing the measure or extent of those profits which certainly would exist. *Fireman's Fund Insurance Co. v. Shawcross,* 84 Nev. 446, 442 P.2d 907 (1968).

We have found no case on point, although there are two cases which provide some direction. In *Owens v. McManus,* 108 Cal.App.2d 557, 239 P.2d 72 (1952), the trial court found that an attachment was wrongful and that it forced the attachment debtor to cancel a lease for a gas station which he had been operating. The attachment defendant had been making a profit of $700 per month, and the lease had seven years to run when it was cancelled. The reviewing court held that the damages awarded of $6585.89 were not excessive, in view of the complete cessation of the business, together with the cancellation of a valuable lease and the loss of profits.

The other case which we find instructive is *Tsesmelis v. Sinton State Bank,* 53 S.W. 2d 461 (Tex.Com.App.1932). Appellant attempts to distinguish this case by arguing that the result was preordained by statute, but we find the case to be grounded in traditional concepts of recoverable damages. In *Tsesmelis,* certain realty belonging to the attachment defendant was attached; the attachment defendant sued for wrongful attachment, seeking damages arising from an unconsummated trade of his property. The court stated, 53 S.W.2d at 464:

However, recovery may be had for such a levy, if wrongful, on a showing that it was the proximate cause of defeating an advantageous sale or trade of the property and the land subsequently depreciated in value, and that the deal was pending when the attachment was levied, or that the plaintiff in attachment had knowledge that a trade was about to be made, and that it was, after the levy, consummated without knowledge of the levy having been made. Where no contention is made that property depreciated in value subsequent to a levy thereon, no recovery may be had upon allegations that the attachment prevented a sale of the land and the application of the proceeds to the payment of the owner's

debts or that the negotiation of a loan was prevented thereby. 5 Tex.Jur. p. 269.

■ From these two cases, we can see the importance of an existing economic enterprise or relationship in determining whether losses caused by a wrongful attachment are the direct and proximate result of the wrong alleged.

In the case before us, it is clear that we are not dealing with damages alleged to have been caused to an existing business enterprise. All the evidence indicates that the existing business, the Red Dog, continued its regular operations and prospered, unimpeded by the attachment. The only damage claimed to have been sustained was to a commercial enterprise in Wisconsin, which did not exist at the time of the attachment in 1968. Appellants testified that they had not considered the new venture or begun to look for a possible site until 1970, two years after the attachment was levied.

Moreover, the record shows that no significant effort was made by appellants to have the attachment removed, although A.R.S. §§ 12–1536 and 12–1537 provide such a method. The record does show that one of the appellants' agents telephoned appellees' attorney, advised of a pending sale, and asked that the attachment be removed. Understandably, the attorney said that he would need other security in order to do what was requested. Apparently no motion to quash the attachment was ever made. Some other negotiations were made in 1971 to set aside the attachment, but this was after the offer to purchase had expired.

Finally, in his deposition, appellant Jack Schuldes testified that he continued to operate the Red Dog when he found that he could not sell it, and that the net profits from the nightclub were $40,000 to $50,000 in the fiscal year preceding his deposition. If he had been able to sell the Red Dog and had purchased the land in Wisconsin, it is clear that he (through the managing partnership), would not have been able to have drawn upon this level of income.

And, since Schuldes was contemplating a sale and lease-back of the Red Dog, some rental expenditure would be involved in the lease-back, even if Schuldes had been able to go through with his plan.

Therefore, we hold that the damages sought in this suit do not have the requisite certainty of existence in order to allow their recovery. The summary judgment in favor of American Credit Bureau, on this aspect of appellants' counterclaim, was properly granted.

## RES JUDICATA

Appellee American Credit Bureau has cross-appealed the trial court's February 21, 1973 summary judgment holding that their complaint was barred by the doctrine of res judicata.

■ The record shows that appellants properly raised this issue by affirmative defense in their answer, as required by Rule 8(d), Rules of Civil Procedure, 16 A.R.S. Then on January 12, 1973, appellants moved for summary judgment based on res judicata, and supported their motion by requesting the court to take judicial notice of the file and judgment in Maricopa County Superior Court No. C–211006, involving the same issues and same parties. It is proper for the trial court to take notice of its own judicial records. *See Visco v. Universal Refuse Removal Company,* 11 Ariz.App. 73, 462 P.2d 90 (1970). No response was filed by the appellee as permitted by Rule 56(e), Rules of Civil Procedure, 16 A.R.S., consequently, the allegations of the motion are treated for the purpose of the motion as a judicial admission. *See Compton v. National Metals Co.,* 10 Ariz.App. 366, 459 P.2d 93 (1969). A written response is required, however, whenever any motion is filed in the superior court. *See* Rule IV, Uniform Rules of Practice of the Superior Court, 17A A.R.S.

The only question remaining for us then is whether the appellants were entitled to judgment as a matter of law. *Eastwood Electric Co. v. R. L. Branaman Contractor, Inc.,* 102 Ariz. 406, 432 P.2d 139 (1967).

At this point we are handicapped in our review of the law issue, since the appellee-cross-appellant has not provided this Court with the record in Maricopa County Superior Court No. C–211006, on which the trial court based its summary judgment. A complete record is the responsibility of the appellee-cross-appellant, *see Visco v. Universal Refuse Removal Company, supra,* Rule 75, Rules of Civil Procedure, 16 A.R.S., and it is impossible for us to determine the res judicata effect of No. C–211006 on this case without that record. Where a partial record is insufficient to decide the issue, we must presume that the trial court's determination was correct. *Orlando v. Northcutt,* 103 Ariz. 298, 441 P.2d 58 (1968).[2]

We hold, therefore, that the February 21, 1973 summary judgment was proper.

The judgments herein are affirmed.

HAIRE, C. J., Division 1, and JACOBSON, J., concur in the result.

---

2. On the basis of the partial record before us, it appears the trial court correctly decided that res judicata applied.